## HOWARD *vs.* THOMPSON.

An action on the case for a *libel* lies against a party making a *communication* in writing to the head of a department of the government charging a subordinate officer of such department with *peculation* and *fraud* of various kinds, where such subordinate officer is subject to removal by the officer to whom the communication is addressed; but such action, though *in form* for a *libel*, is in the nature of an action for a *malicious prosecution*, and the proof to sustain it must be the same as is required in the latter action, i, e. the plaintiff is bound to show both *malice* and a *want of probable cause*.

Where the conduct of a public officer, against whom complaint is made, be such as with the attendant circumstances to excite the honest suspicion of a citizen that the officer is chargeable with a want of fidelity to the

trusts reposed in him, or with fraud as it respects the government, and an action is brought against a citizen for a representation made by him respecting such officer, the question of *probable cause* should be submitted to the jury.

Even after a *notice of justification,* the proof of which is abandoned on the trial, the defendant may, in an action like this, rest his defence upon the ground of *probable cause;* he is precluded from doing so, under such circumstances, only where *probable cause* is mere matter of *mitigation.*

THIS was an action for *libels* published by the defendant, of and concerning the plaintiff and his official conduct as a public officer, tried at the New York circuit in November, 1837, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The *libels* consisted of three letters written by the defendant, addressed to Levi Woodbury, secretary of the treasury of the United States, in the months of June and July, 1836. The plaintiff had for several years been employed in the custom house department at Staten Island, first as a *boarding officer* then as *store keeper* and afterwards as an *inspector,* which two latter offices he held at the time of the writing of the letters. The parties resided at Tompkinsville on Staten Island, where the defendant held the office of *post master.* The substance of the letters is, that the plaintiff and others had been guilty of *extensive frauds* committed upon the revenue ; that the plaintiff, six years before writing the letters, was very poor, that he lived extravagantly, and had built a splendid mansion worth about $10,000, adding that "four dollars per day cannot do such wonders ;" and that he would prove that the frame in the plaintiff's building was taken from timber removed from the public store in 1832, and was worth $200 ; and repeatedly suggests the propriety of having the plaintiff's property attached, and a suitable person appointed to make investigations. The defendant pleaded *non cul.,* and gave *notice of justification,* enumerating a great variety of cases of the grossest fraud and peculation of which he alleged that the plaintiff had been guilty, and which he would prove on the trial. On the trial of the cause, the letters were produced and read in evidence, when the counsel for the defendant announced that they *disclaimed* all intention to justify the charges contained

Howard v. Thompson.

in the letters, and in the notice of justification. It appeared in evidence, that in the winter of 1836, the plaintiff and others sought the *removal* of the defendant from his place *as post-master*, but did not succeed. A witness for the plaintiff testified, that at the time of the service of the *capias* in this cause, the defendant said " that if Howard had let him alone, he would have let Howard alone." The plaintiff, after giving some evidence to rebut the inference of probable cause, rested and the counsel for the defendant moved for a *non-suit*, on the ground that the letters in question should be deemed *privileged communications*, and that therefore the plaintiff could not recover unless the charges were made *without probable cause* and *maliciously ;* that malice must be proved, independent of the letters themselves, and that no proof of malice had been given. The judge decided that sufficient evidence of express malice had been given to submit the case to the jury, and therefore refused to grant the motion.

The counsel for the defendant then, for the purpose of *rebutting the charge of malice* and *to show probable cause* for the communications made to the secretary of the treasury, called several witnesses; the first of whom proved, that in 1832 a public store belonging to the government was taken down, and another repaired in 1834; that the plaintiff subsequently built a large house, and erected other buildings upon his own property; that thirty or forty loads of timber were carted from the public grounds to the plaintiff's premises; and that a portion of the timber thus taken, worth at least $200, was used in the erection of the plaintiff's buildings. This witness testified that he communicated these facts to the defendant in February or March, 1836, and observed to him that the subject ought to be investigated. It was testified that the timber taken from the public stores was worth from *four* to *six* hundred dollars, and that there had not been a public sale thereof. The deputy sheriff who served the capias, and another person present at the time of the service thereof, testified that they did not hear the defendant use the expressions, " that if Howard had let him alone, he would have let Howard alone ; but

Howard v. Thompson.

the witness who had testified to those declarations being re-called, reiterated his testimony, saying that he had on the day it occurred made a memorandum of the language of the defendant, so as to be certain of what was said. To coun-tervail this testimony given by the defendant, it was proved that the plaintiff built a *bathing house* and a *wood house* on the public grounds for the convenience of the establishment at Staten Island, in the erection of which he expended pro-bably $300, from his own pocket. *Samuel Swartwout*, the collector, testified, that though there was no absolute neces-sity for those buildings, they were highly convenient; that he saw the old timber taken out of the public stores; it was decayed, and he told the plaintiff to take it and remunerate himself out of it for the expense he had incurred, and to give the rest away *to the poor* for fuel, if it could not be used for the public works. It further appeared that the timber used by the plaintiff was *openly* and *publicly* taken and used · one witness stated that its value did not exceed *sixty-three dollars*, and another, that its value was not equal to the amount advanced by the plaintiff from his own pock-et in the erection of the bathing house and wood house. The judge charged the jury that there was no proof to warrant the conclusion that the defendant had *probable cause* for making the charge imputed to him; and if they were satisfied that he had made the charge, that it was *un-true*, and that the defendant was actuated by *express malice*, they must find a verdict for the plaintiff. The jury found for the plaintiff, with $3000 damages. The defendant asks for a new trial.

*D. Lord, jun. & J. W. Gerard*, for the defendant.

*H. Nicoll*, for the plaintiff.

*By the Court*, COWEN, J. This is an action in which the plaintiff, Howard, complains, that while he held the of-fice of inspector of the customs and keeper of the public stores of the United States, the defendant falsely libelled him by addressing certain letters to the secretary of the

Howard v. Thompson.

treasury, charging and offering to prove that the plaintiff had been guilty of fraud in the execution of his trust as such keeper; specifying particularly the conversion of timber belonging to the United States in 1832. The secretary of the treasury was the officer who had legal cognizance of the complaint, and the power of removing the plaintiff on its being substantiated. For some reason, however, the investigation, which we must presume was duly made, proved so unsatisfactory to the secretary, that he thought it his duty to deliver up the letters to the plaintiff; and they were used by him as evidence to the jury. The defendant had given notice with his plea, that he would prove the truth of his charge in bar; and seems to have entertained the confidence of being able to do it, till, on the trial, he became so doubtful of success in convincing the jury, that on the plaintiff's resting, he avowedly abandoned the attempt, and staked his defence: 1. upon the unwarrantable nature of the prosecution, and 2. on evidence that, though he might have been mistaken, yet the circumstances were such as to have afforded at least *probable cause* for the representations he had made. The first ground was presented in the form of a motion for a *nonsuit*, insisting that the plaintiff must, as in the ordinary case of a malicious prosecution, show a want of probable cause. The judge thought otherwise, holding that the proof given of the defendant's ill will towards the plaintiff was enough to carry the cause to the jury. This presents the first question which we are called upon to examine. Does a complaint addressed by a citizen to the proper tribunal against another, from motives of ill will towards the latter, subject the complainant to an action of slander, as for a libel, unless it be apparent that it was without probable cause? It may be put still more shortly; is it subject to be prosecuted as a libel? Must it not be pursued as a malicious prosecution or complaint?

This is not precisely like the case of a written communication between private persons, concerning their own affairs, nor was it addressed to a man or a set of men chosen by a voluntary society, a bishop or presbytery for example, and having, by common consent among the members, a power

Howard v. Thompson.

to redress grievances. It is therefore not necessary to inquire whether, in such instances, an action for a libel may not be brought in the common form. It has generally been so brought; and, though the communication has been deemed *prima facie* privileged, yet I believe where ill will towards the plaintiff has appeared, or motives of interest, and the defendant has failed in proving at least probable cause, the action has generally been sustained. The rule in respect to such mere private communications seems to have been laid down very sensibly by Mr. Justice J. Parke, in *Cockayne* v. *Hodgkisson*, 5 Carr. & Payne, 543. The defendant had made representations by letter to Lord Anglesey against his game keeper. In an action by the latter, the defendant failed to prove the truth, relying on the good faith with which he made the communication. The judge left it to the jury, mainly on the letter itself, whether it was such as a man would write merely wishing to put Lord Anglesey on his guard, and cause him to institute an inquiry; or whether the defendant was actuated by malice, and wished to supplant the plaintiff. In the former case, he said the defendant was entitled to a verdict; in the latter, the plaintiff. This too was after very clear proof that the defendant *had been told the stories* which he had written to Lord Anglesey, and seems to have had probable cause. He had also been requested by Lord Anglesey to give him information of any thing wrong. The letter was put on the naked footing of a libel; for it was said the defendant could not prove its truth without a plea of justification; which is clearly otherwise where an action is brought for a malicious prosecution.

The principle of the case cited and a number of others which preceded it, is very obvious. The private business of society could not be conducted without the liberty of speaking and writing in the honest pursuit of its purposes, even though, under other circumstances, the words would be slanderous; and though all that is said be a mistake, yet the words shall not, for that reason alone, be actionable. The distinction was a good deal considered in *Bromage* v. *Prosser*, 4 Barn. & Cress. 247, where it was allowed in a case of oral slander. And see Holt on Libels, 197, also *De-*

*lany* v. *Jones*, 4 Esp. R. 191. But actual ill will towards the plaintiff may raise a presumption in the mind of the jury, that the appearance of a lawful purpose was assumed in order to injure him. When they are brought to believe this, it is their duty to find that the defendant acted in fraud of the law, which gives the privilege, and award damages against him. Whenever the communication is, for this or any other cause, taken out of the protective rule, the law acts upon it directly as a slander.

The rule is known to be different where the communication made or caused, is in itself the institution of a *judicial inquiry*. There, if it be apparently pertinent, it is absolutely exempt from the legal imputation of *slander*; and the party injured is turned round to a different remedy, an action for *malicious prosecution ;* wherein he is bound to prove in the first instance, not merely that the communication was made in bad faith ; but that it was not countenanced by probable cause. Such is the familiar instance of a criminal complaint addressed to a judicial magistrate or a grand jury, which results in a warrant or an indictment. 1 Curzon's Hawk. 554. The same thing may be said of any other definite or specific step in the progress of the cause ; as the presentment of the bill in open court by the grand jury, *id.* or the publication of it by the clerk or prosecuting attorney upon arraignment. And yet many things may occur incidentally in the course of the cause, which would subject the speaker to an action of slander. Such are slanderous words spoken untruly and impertinently by witnesses, or by counsel, *Ring* v. *Wheeler*, 7 Cowen, 725. Such words communicated in writing would be the subject of an action, as a libel. The ordinary prosecutor of an indictment may doubtless make himself liable in an action of slander in the same way, by what he may incidentally say of the case. Serjeant Hawkins lays down the rule of exemption, as it stands upon the cases in respect to the definite proceedings in a cause, without any qualification. But he throws out the idea upon his own authority, that a malicious prosecution may subject the guilty participators in it to an action, as for a libel. Hawk. P. C. B. 1, ch. 28, § 8.

He does not, however, pretend to be countenanced by authority; and it would be very difficult to apply the suggestion even to the prosecutor of an indictment any more than to the ministers of justice. See *per* Best, J. in *Fairman* v. *Ives*, 5 Barn. & Ald. 648. Sound policy would seem to exempt the prosecutor, to the same extent as the grand jury. Either is liable to an action for corruptly procuring an indictment; but to treat it directly as a libel, would be quite as effectual in discouraging due inquiries concerning crime, when applied to the former, as to the latter. The law therefore, seems to require in such case, a remedy more specific in form, and calling for more evidence to sustain it, than it receives as sufficient in an action for an ordinary libel.

Another class of writings has, in practice, been pursued as *libels*. These are such as contain false and scandalous matter, addressed to executive, administrative or other officers, entrusted with the power of appointment to or removal from inferior offices; and seeking either to prevent appointments or promote removals, on charges importing want of integrity, or other causes of unfitness. Such was a petition to the council of appointment, praying the removal of a district attorney, *Thorn* v. *Blanchard*, 5 Johns. R. 508; a deposition made with the view of presenting it to the governor of Pennsylvania, containing charges against a justice of the peace, *Gray* v. *Pentland*, 2 Serg. & Rawle, 23; and a memorial to a board of excise, remonstrating against the granting of a tavern license, *Vanderzee* v. *M'Gregor*, 12 Wendell, 545. In regard to such writings, there is certainly no authority for saying that, in form, the injured party shall be put to his action for a malicious prosecution, complaint or remonstrance; nor would it, perhaps, be safe to interpose such a restriction. Although the reason for giving countenance to information may be of as much force as that in respect to judicial prosecutions for crime, yet the precautions against ill-founded charges and irregularities in conducting them are much less; nor is there any restraint by settled precedents and forms of proceeding. To this intermediate class between judicial prosecutions and privileged commu-

Howard v. Thompson.

nications in regard to matters having no immediate connection with the functions of government, the letters in question belong. The form of the action we take to be correct, but this is certainly not decisive of what shall be deemed full proof to sustain it. Must the plaintiff show not only malice but want of probable cause, the same as if the action had been technically for a malicious prosecution? The evidence established no publication at large, none in the newspapers, no reading to the neighbors. The letters were addressed to the officer having the power, and on whom rested the duty to remove, if the cause assigned were found by him to be true ; and they were forwarded directly to him. Nothing impertinent can be imputed to them. There is not the least doubt that, so far, they were for the reasons assigned in *Thorn* v. *Blanchard,* and other cases already cited in connection with that, as much without the doctrine of *libel* as an *indictment.* They were equally, not to say still more so, upon the reasoning of *Fairman* v. *Ives* and other English cases hereafter to be noticed; for some of the latter, I think, take them absolutely out of the doctrine, under any qualificated. They very nearly resemble the printed book sought to be prosecuted in *Rex* v. *Baille,* 2 Esp. N. P. 91, Gould's ed. of 1811. It contained an account of the abuses of Greenwich Hospital, treating the officers of that institution, and Lord Sandwich in particular, who was then first lord of the admiralty, with much asperity ; but copies were distributed among the governors of the hospital only. On motion for a criminal information, Lord Mansfield stopped the prosecution on the point that such a proceeding did not amount *even to a publication.* He put it on the ground that the distribution had been confined to persons who were, from their situation, called on to redress the grievances complained of, and had, from their situation, power to do it. If this was not a *publication,* certainly no private action could have been maintained as for a libel. Holt on Libels, 290, N. Y. ed. 1818, The party must have been turned over to an action for a malicious prosecution of the complaint, in which form he must have shown, on his own side, a want of probable cause. It is better ,perhaps, that such a form of action

should not be exacted. There is room, I think, for saying, on principle and authority, that on showing enough to take away the privilege, that is to say, when the party has defrauded the rule which confers it, he is a false libeller. The rule is void as to him. What facts work a nullity? It does not follow that, because we allow an action of slander, the defendant should, therefore, be put to justify, as in the ordinary action, by proving the truth. That is not so even as to writings which concern private matters. On its appearing that they are privileged, the defendant is protected under the general issue, until malice is shown. When we come to information, in which not only the interests of the private citizen as related to the country, but those of the nation itself are concerned, the difficulty of turning a case against him wherein he is presented as *prima facie* in the path of honest duty, certainly ought not to be less; and both the prevailing opinions in *Thorn* v. *Blanchard*, which was decided by the court of errors, required more. They held that the action, though in form for a libel, was in the nature of a malicious prosecution. *L'Hommedieu*, senator, said the council of appointment being a court, if he might so call it, to hear all complaints against officers, &c., there is an implied protection for the complainants, unless it can be proved that the complaints were malicious. 5 Johns. R. 527. *Clinton*, senator, carried these premises out more distinctly to their consequences. He said it was incumbent on the plaintiff to prove that the petition was *false, malicious* and *groundless;* and he goes into the reasons at length, repeating and illustrating the position. Id. 529, *et seq.*

The case of *Gray* v. *Pentland*, before the supreme court of Pennsylvania, was of the same character; and I understand all the judges as admitting that the suit, though in form of a libel, was in the nature of an action for a malicious prosecution; though they do not, like the opinions in *Thorn* v. *Blanchard*, throw, in express terms, the *onus* of showing want of probable cause on the plaintiff. *Fairman* v. *Ives*, 5 Barn. & Ald. 642, was an action for a libel. The paper complained of was a representation by a creditor of the plaintiff, a half pay officer, addressed to the secretary at

Howard v. Thompson.

war, charging him with fraudulently evading the payment of a debt. All the court agreed that, if the representation was honestly made, that was a defence under the general issue. *Holroyd*, J. mentioned as an analogous case, words spoken by a barrister in the course of a cause, in which he said, " it may not, perhaps, be sufficient to allege and show even that the words are false and malicious, without also alleging and showing that they were uttered without reasonable or probable cause." *Best*, J. said he did not think there was a sufficient *publication* to support the action ; and mentioned the case of *Greenwich Hospital ;* but adds, " if the communication be made maliciously *and without probable cause,*" an action will lie. In *Vanderzee* v. *M'Gregor*, 12 Wendell, 545, there was a failure to prove either malice or want of probable cause ; and the court said the plaintiff could not recover without proving *express malice*. It was unnecessary to go farther. The court professedly acted upon the authority of *Thorn* v. *Blanchard ;* and they could not mean to imply that you may recover on showing malice, where there appears to have been probable cause, contrary to the strong expressions in that case, nor even to deny that the plaintiff must himself show a want of probable cause. In the principal case, there was nothing to throw a shade of suspicion upon the motive. It was the simple remonstrance of a neighbor against the licensing of a tippling shop, which is, I must say, somewhat unfortunately, still recognized as an object of legal protection, *lucri causa*. It was a call to withhold the privilege of peddling popular poison from hands which were believed to have abused that privilege. It is to be feared there are too many real not to say melancholy causes of personal offence against dealers in alcohol ; cases of private suffering which may engender hatred and malice in those who are reached by its influence ; and shall their state of mind, where they act upon probable appearances, though mistaken in the fact, be imputed to them as a fraud *per se* upon the protective rule ? In *Fairman* v. *Ives*, the creditor showed, in his letter to the secretary at war, that he must have been greatly provoked by the apparently mean evasions which the half pay officer had

practised, to avoid the payment of his honest debt ; and though it turned out that the creditor was mistaken, the court held him protected by *probable cause*, without regard to his state of mind. He was there personally interested ; and the supposed provocation had rankled into a sinister desire to punish the delinquent—express malice of a severe complexion ; yet the protective rule was held to be unbroken. In this case too, as we have seen, Best, J. like Lord Mansfield in the case of *Greenwich Hospital*, denied that the paper had been *so published* as to make it a libel. That is clearly going farther than did Clinton, senator, in *Thorn* v. *Blanchard ;* for he thus not only demands the same measure of proof as in an action for a malicious prosecution, but the same form of action *mutatis mutandis*, while *Thorn* v. *Blanchard*, is content with the proof.

If the action is to be regarded as standing on the same footing as to evidence, with one for a malicious prosecution, I need hardly go into the authorities to prove that whatever degree of malice may be shown, it is still necessary to go farther, and establish want of probable cause. The cases of *Purcel* v. *M'Namara*, 1 Campb. 199, *Incledon* v. *Berry*, id. 203, note (*a*) with id. 206, note (*a*) and the authorities there cited, are full to the point. The cases to the same point are yet more fully collected in 2 Selw. N. P. Philad. ed. 1839, p. 1079, note (2.) And *vide per* Nelson, J. in *Weaver* v. *Townsend*, 14 Wendell, 193. I confess I am strongly inclined to think that the same quantum of proof is necessary in actions for this class of libels, and that the plaintiff should, therefore, have been nonsuited ; although I admit the judge was right in saying there was such proof as might be taken into the consideration of the jury on the question of express malice.

But admitting the *onus* to lie on the defendant, the cases cited agree most clearly, that actions for petitions or remonstrances addressed to the appointing power, being *quasi* for a malicious prosecution, will not lie where it comes out on the whole evidence, that there was probable cause. I refer particularly to *Thorn* v. *Blanchard*, and *Gray* v. *Pentland*, with the general remark that they are entirely sustain-

Howard v. Thompson.

ed, at least in this, by the whole body of British authority. Adequate references will be found in *Thorn* v. *Blanchard.* The marginal note to *Gray* v. *Pentland* states that such libels are "excused if they did not originate in malice *and* without probable cause." Tilghman, Ch. J. there took the view most favorable to the plaintiff, yet remarked : " Any thing which satisfies the jury that the proceeding did not originate in malice *and* without probable cause, is sufficient to excuse him." 2 Serg. & Rawle, 30.

At any rate, all the cases which have spoken to the point, hold that probable cause, when shown by the defendant, will make out a complete defence ; or is receivable in mitigation : and so much, at least, was agreed by the learned judge, who tried the cause now before us. It was received in mitigation where the libel was published by the editor of a newspaper against an elective officer, after he had succeeded in his election. *Vid. King* v. *Root,* 4 Wendell, 114, 139, 143. Some courts have held that, even in the ordinary action of slander, the defendant may show in mitigation, that a person *told him* what he uttered as a slander, especially where the slander, in terms, professes to be founded on a hearsay. *Kennedy* v. *Gregory.* 1 Binn. 85. It will never do to say that where there are circumstances raising strong suspicion of official misconduct, the friends of the officer, or persons indifferent alone, shall come within the protection. It is important that others more ready to complain, should be equally favored. There is no reason if they bear actual ill will to the plaintiff, why this should remove from them what would be, of itself, a complete shield to the rest of the community. This brings us to the only remaining question in the case.

Suppose I am mistaken as to the *onus,* was there not here proof of probable cause ? Or, at least, so much evidence that the judge was not warranted in withdrawing the question for the jury ?

· The plaintiff himself admits that he took the timber entrusted to him as keeper of the public stores, and converted it to his own use, in building a dwelling house. The defendant saw, or at any rate was informed of the fact by a

neighbor, who suggested that it would be well to communi-
cate the fact to the government. This the defendant did,
at the same time drawing his own reference that the act
was done fraudulently. Admitting for the present, that the
plaintiff had a right thus to convert the timber, can it be
said that his conduct was so entirely pure on its face, as to
raise no misgivings in the minds of his neighbors ? They
knew him for a public trustee ; and saw him converting to
his own use, a portion of what he had in charge. They
knew nothing of the manner in which he had acquired a
title. Suppose one of them had seen a carrier start with a
box of goods ; and overtaking him on his way, far from the
eye of his bailor, had afterwards seen him in the act of
breaking bulk, and selling a part of the goods. Such a
juncture of circumstances would, in a court of justice, be
*prima facie* evidence of larceny ; and could it be said that
the spectator would be open to a malicious prosecution should
he procure an indictment ? If his neighbor, happening to
see the same thing, should inform him of it, and urge a
prosecution, this would heighten his suspicion. It would
operate as an additional cause for the prosecution. Indeed,
had he merely heard of the circumstance from the observer,
it is by no means certain that he would not be justified in
giving information to the magistrate. In *Cockayne* v.
*Hodgkisson*, before stated, the judge put it to the jury to
say, whether the defendant had been told by a third person
what he had communicated in the libel ; and whether he
believed it ; and we have seen that the same thing has been
received as mitigating evidence in actions for common libels
and slanderous words. It would not differ the case, that
the carrier had secretly bought of his bailor, the articles
which he took from the box, unless the defendant had been
informed of the purchase. *Weaver* v. *Townsend*, 14 Wen-
dell, 192, which was a case of malicious prosecution, turn-
ed on the fact that the defendant knew the plaintiff had a
*prima facie* title to the property, for stealing which the de-
fendant had caused him to be indicted.

I do not see that the case at bar comes materially short,
of the supposed carrier's, except in the degree of the offence.

Howard v. Thompson.

In that, the circumstances would raise a suspicion of larceny; in this a suspicion of embezzlement. That the act, was done openly, is by no means conclusive to the mind, nor has it much force, unless it appear that the owner was present or known by the peculator, to have means of promptly detecting and punishing him. With others it might be regarded as a mere affectation of conscious innocence. If the property taken was trifling in amount, with some, that might lull suspicion, while with others it might increase it, and be considered as an index to greater spoliations. "If," says Washington, J. in *Wilmarth* v. *Mountford*, 4 Wash. C. C. R. 79, 84, the plaintiff, "by his folly or his fraud, exposed himself to a well grounded suspicion, the prosecution had, at least, probable cause for its basis, and this is sufficient to defeat the action."

It appears to me that the judge in this view of the matter was most clearly bound, at least, to have left the question to the jury. If it was to be decided as matter of law and that is generally so with the question of probably cause, where the facts are undisputed, Dallas, J. in *Hill* v. *Yates*, 2 B. Moore, 80, 82; *Pangburn* v. *Bull*, 1 Wendell, 345; *Gorton* v. *De Angelis*, 6 Wendell, 418; then, I think, he should have told the jury that probable cause had been established.

But it is objected that the defendant was too late in his offer to show probable cause, after he had set up on the record, that he would prove the truth. It is a sufficient answer to say that the judge did not think so, and the defence proceeded on the ground that the proof was admissible. If the defendant had been denied that view, *non constat* but he might have pursued his notice of justification by giving farther evidence of its truth. But independent of the course thus taken, we have seen enough to say that the objection is founded on a misapplication of the cases. It is indeed generally true that such a justification, where the defendant fails to prove it, may be used as evidence of express malice; and it is too late to waive it at the trial, and resort to mistake. *Patty* v. *Stetson*, 15 Mass. R. 48. Walworth, chancellor, in *King* v. *Root*, 4 Wendell, 139, 140. *Clinton* v.

*Mitchell*, 3 Johns. R. 144. *Lent* v. *Butler*, 3 Cowen, 370. But the rule is co-extensive with those cases only where probable cause is matter of mitigation merely. In actions for a malicious prosecution, or *quasi* such, where it makes a bar, the reason ceases. It was never held, that because a man pleads in bar specially, or gives notice of special matter, he shall be cut off from another defence which is receivable under the general issue. The contrary has often been held. *Levy* v. *Gadsby*, 3 Cranch, 180, 186. *Smith* v. *Gregory*, 8 Cowen, 114. *Fulton Bank* v. *Stafford*, 2 Wendell, 483. *Bradley* v. *Field*, 3 id. 272.

But more. It is not quite easy to see, that on the plaintiff's own showing, his case was exempt from a still stronger view, had the defendant chosen to pursue it. Swartwout, the collector, had given the plaintiff leave to take the timber, and the letters alluded to him as a party to the frauds which were going on. He was called as a witness, but certainly did not make the plainest case of the matter against actual embezzlement. Admitting him to have had a right to sell the timber at auction, or otherwise, for the best price he could get; that did not authorize him to *give*, any more than it did the plaintiff to *take* it, in exchange for an article of mere luxury, or at most, convenience, viz. the bath house which the plaintiff volunteered to build for the United States. Nor was the manner of payment by any means the most prudent. Telling the plaintiff to carve for himself, till he was satisfied, might certainly have been no more than was due from Mr. Swartwout to him as an honest neighbor, had the timber in question belonged to him in his own right. Holding for the public, it at least laid the proceeding open to invidious remark; nor can I collect that Swartwout took any precaution to limit the amount within the measure of a just *quid pro quo*. In short, a *carte blanche* was given to the plaintiff, first for himself, and secondly in favor of the poor inhabitants, for the purposes of fuel. I repeat, that all this might have been very well as a disposition of Mr. Swartwout's own property; but that it was not technical embezzlement when applied to the public property, is by no means clear. It might not have been morally so; but it

Howard v. Thompson.

was an instance of such gross neglect in a few things, as might well lead a citizen, jealous of the public rights, to question whether the same practices had not been extended to many things by the same men. Though in itself a "trifle light as air," it disclosed a principle which might have operated as "confirmation strong" that more extensive peculation had been committed in secret, especially when taken in connection with the late poverty of the plaintiff, his small wages, his extravagant living and the now splendid mansion, in the erection of which he was employing the property of the nation. These things are asserted in the letter, and not contradicted by the proof. I admit, that in the ordinary action of slander, they would be presumed false. In this we have seen the presumption is reversed, and I therefore mention them.

Had all the circumstances of this case been disclosed to the treasury department, I can hardly believe that its upright, able and sagacious head would have voluntarily surrendered these letters to be used as evidence. In *Gray* v. *Pentland,* the court held that they could not compel the governor to produce the paper, nor would they allow parol evidence to be given of its contents. Being a complaint properly addressed to him as a visitorial magistrate, the court held, upon the ground of policy, that they would not control the exercise of his discretion, nor would they allow its intended effect to be evaded by the introduction of secondary evidence. In this they were fully sustained by the decisions at Westminister Hall, and several cases which might be cited from American books. I know that the right of remonstrance may be abused ; and I cannot doubt that the secretary was pressed with what the defendant's counsel admitted at the bar : the great public services and elevated character of the plaintiff. Had the defendant printed and published his remonstrance, the case would have been far different; his privilege then would have been lost. Even the privilege of parliament is forfeited by a member publishing a slanderous speech or a slanderous report. But, for aught that appears, these letters have performed no other office than furnishing a sort of information, vital, above all

things, to the safe operation of the fiscal department of the government.   At any rate, whatever may be the general merit of the plaintiff, and however innocent he may be in the particular matter, we cannot hold the defendant criminal for thus communicating what the plaintiff has been so unfortunate as to give him probable cause for supposing to be true.

New trial granted.