## STREETY *vs.* WOOD.

The preferring of charges to a Lodge of Odd Fellows, by one member of the
order, against another, the acts charged being violations of the rules of the
order, and which charges the lodge has power, under those rules, to receive
and investigate, is *prima facie* a privileged communication; and if made in
good faith, an action for slander does not lie against the party preferring
the charges.

In an action for slander, in making such charges, it is erroneous for the judge
to charge the jury that although the defendant had probable cause for pre-
ferring the charges, if he was actuated by malice towards the plaintiff and
acted in bad faith, in so doing, the jury will be justified in finding a verdict
for the plaintiff.

It is also erroneous to refuse to advise the jury that if they find that the de-
fendant had probable cause for presenting the charges, they are bound
to find for the defendant, whether he was actuated by malice, or not.

The presenting of charges to a member of the order, for the purpose of pro-
curing his signature, is also privileged.

THIS was an appeal by the defendant from a judgment entered
upon a trial at the circuit.

The complaint charged the defendant with publishing a libel,
of and concerning the plaintiff, on or about the 21st of June, 1850,
in the words following, viz.: "He (the plaintiff) has been re-
peatedly guilty of falsehood, lying and deceiving, in his business
transactions with Hiram Clark, Peter Myers, A. Davis, Conrad
Welch, James O. Moore, and various other persons, within and
during the year past." Likewise, the words following, viz.:
"He is guilty of dishonesty in his deal, and defrauding those
with whom he deals by giving false measurement, and cheating
his customers and those with whom he contracts for lumber,
as I have been informed by credible persons." The answer,
1st. Denied the publication of the alleged libellous matter.
2d. Justified, averring the truth of the statements charged as
libellous. 3d. Set up the following special matter, viz.: That
the plaintiff and defendant were at the time of the alleged pub-
lication members of an association known as the Independent
Order of Odd Fellows; that the acts charged in the alleged
libel were violations of the laws of said order; and that the
publication complained of was a presentment to the lodge, of

which both parties were members, of the charges, for the purpose of having the truth thereof inquired into, and the plaintiff dealt with according to the laws of the order. The reply denied the truth of the statements set up by the defendant as a justification. In reply to the defendant's third answer, it alleged that the said charges (presented to the lodge by the defendant) were not presented in the manner provided by the laws of the order, in that they did not specify the offense, so as fully to apprise the plaintiff of the nature thereof, and enable him to prepare for his defense; neither did the defendant believe them, but that the publication was malicious and with intent to injure. The cause was tried at the Livingston circuit, in September, 1851, before Justice Taylor, and a jury.

Abram Lozier, a witness sworn for the plaintiff, testified that in June, 1850, the defendant handed witness a paper to be presented to the lodge. Witness produced the paper, and testified that it was in the defendant's handwriting, and was his signature. The paper was addressed to Canaseraga Lodge, and contained charges against the plaintiff, embracing the words charged in the complaint. Defendant first laid it on the desk of the secretary, in the lodge. Witness was secretary at the time. Said he wanted witness to read them. He wanted to prevent the plaintiff's election. This was in the evening. The election was to be held one week from that evening, the last Friday night in June. Defendant met witness one day before the American Hotel; witness and he were talking about the election in the lodge; he said he had a matter in the mill for Streety. This was before the charges were preferred, and in June, between the first and middle. Thinks the plaintiff was not nominated at the time the charges were presented to the lodge, but was known as a candidate by defendant. On his cross-examination, the witness testified there were two Odd Fellows' Lodges in Dansville, at that time; one called Canaseraga Lodge, No. 123; the other, Livingston Lodge, No. 322. Witness was a member of Canaseraga Lodge; so was the plaintiff. Defendant was a member of Livingston Lodge. Members of different lodges have a right to visit each other's lodges when they choose. Witness has been

Streety *v.* Wood.

.a member of the order about six years ; is acquainted with the rules and regulations of the order. The acts charged in the paper presented to the lodge, if true, are violations of these rules. A member of one lodge has a right to prefer charges against a member of another; the different lodges have a connection in this, that they are under the same grand lodge. All the lodges under the jurisdiction of the same grand lodge, are governed by the same constitution. Each lodge makes its own by-laws, subject to ratification by the grand lodge. The book presented is a copy of the constitution and by-laws of Canaseraga Lodge, as they existed in June, 1850, and contains the following provisions : No member shall be put upon trial, unless charges duly specifying the offense, so as fully to apprise him of the nature thereof, and enable him to prepare for his defense, shall be submitted to the lodge in writing, signed by a member of the order. The lodge meets once a week. The paper was presented on the 21st or 28th of June. It was an evening of a regular meeting. The meeting had been organized and business had commenced. It was presented in the usual way, and took the usual course of such papers. The paper had never been out of my possession. The society of Odd Fellows is a secret society. On a re-examination by the plaintiff's counsel, the witness testified that it was his duty to read the charges in their proper order when presented. That the lodge adjourned before he had an opportunity to read them, the evening they were presented. They were read on the night of the first Friday of July, the first meeting after the election, which was on the 28th of June. Plaintiff was elected Noble Grand, the highest officer in the lodge. The installation to office took place on the first Friday of July. The plaintiff's counsel asked the witness whether he thought the charges were sufficiently specific to put the plaintiff upon trial ? To this question defendant's counsel objected, on the ground that it was asking the opinion of the witness ; and the court overruled the objection ; to which the defendant's counsel excepted. The witness testified that it was his opinion, at the time, that the charges were not sufficiently specific to subject the plaintiff to trial, according to the rules of the order.

Witness had a conversation with defendant, not to exceed two weeks before the charges were presented. Plaintiff's counsel asked the witness what the conversation was; and stated that it was for the purpose of showing express malice of the defendant. Counsel for the defendant objected to any evidence of malice, unless it related to preferring the charges; and the court ruled that general illwill was insufficient, but the evidence must be of malice in the act complained of. The counsel for the plaintiff stated that he expected the testimony offered would tend to show that the defendant was actuated by express malice in making the publication complained of, and the judge admitted the testimony, as follows: The conversation was in the defendant's store. We were talking about plaintiff being elected N. G. of the lodge. Defendant said plaintiff had used him meanly, in regard to some money that was coming from James O. Moore. Said plaintiff owed Moore, and Moore owed defendant; and he wanted plaintiff to pay him $100, and he would not do it. Plaintiff had bought Moore's lumber, and he wanted the money to go below. Witness told defendant he had a note against plaintiff, which he wished plaintiff would pay. He asked the amount; witness thought it was about $40. Defendant said, "You let me have the note, I'll sue him quicker than God." He said, "I am after him; I will show him where his little fourteen hundred dollar house and lot is." He said he understood there was a mortgage upon it; and he calculated to get it if he could. Witness had a conversation with the defendant after the charges were disposed of. Told him the charges against plaintiff had been ruled out of the lodge, on the ground that they were not specific enough. He said, "By God I'll specific Canaseraga Lodge." On his further cross-examination, witness said, an appeal lies from the action of the lodge on such charges, to the district grand committee. Witness supposed defendant meant he would appeal, when he said he would specific the lodge. An appeal was taken, but no return to it was made. Other testimony was given, not necessary to be mentioned. The jury found a verdict for the plaintiff for $200 damages.

Streety v. Wood.

*J. A. Vanderlip*, for the appellant.

*T. Hastings*, for the respondent.

*By the Court*, T. R. STRONG, J. There can be no doubt, I think, that the preferring of the charges, in this case, to the lodge, was *prima facie* privileged. The acts charged were violations of the rules of the order of Odd Fellows, of which both the parties to the action were members. The charges were addressed to a body having power under those rules to receive and investigate them; and if found to be true, apply a remedy; and an equal right to prefer charges appears to have belonged to each member of the order. The case is analogous to that of charges made in a regular course of discipline, between members of the same church, which it is well settled are thus privileged. (*Jarvis* v. *Hatheway*, 3 *John.* 178. *O'Donoghue* v. *McGovern*, 23 *Wend.* 26.)

The presenting substantially the same charges to Osborn, a member of the association, for the purpose of procuring his signature, was, I think, equally privileged. (*Vanderzee* v. *McGregor*, 12 *Wend.* 545.)

It was assumed by the plaintiff, and held by the justice, at the trial, that the case was one of a prima facie privileged communication, and that it was necessary on that account for the plaintiff to prove express malice in making the charges, to maintain the action. But the justice further ruled, "that although the defendant had probable cause for preferring the charges, if he was actuated by malice towards the plaintiff, and acted in bad faith in making the publication, the jury would be justified in finding a verdict for the plaintiff;" and he refused to advise the jury "that if they found that the defendant had probable cause for presenting the charges, they were bound to find for the defendant, whether he was actuated by malice or not." This ruling and refusal, in respect to the effect which should be given to probable cause, it is claimed on the part of the defendant, were erroneous; and that is the principal question for decision.

Streety *v.* Wood.

In cases of communications addressed to public officers under, our national or state constitution and laws, to prevent appointments of particular individuals to office, or to procure removals from office, or for the redress of grievances, if charges made in them are pertinent, and the officer addressed has power to act in the matter, I regard the doctrine as now firmly established, that they are so far .privileged that to maintain an action for a libel, founded upon them, it must appear that the charges were made both maliciously and without probable cause. The action, though in form for a libel, is in the nature of an action for a malicious prosecution, and requires the same proof in the respects mentioned, to sustain it. (*Thorn* v. *Blanchard,* 5 *John.* 508. *Howard* v. *Thompson,* 21 *Wend.* 319, *and cases there cited. Cook* v. *Hill,* 3 *Sandf.* 341.) It was intimated by Cowen, J. in *Howard* v. *Thompson,* decided in 1839, that this doctrine might not be applicable to privileged communications " addressed to a man or set of men chosen by a voluntary society, a bishop or presbytery, for example, and having by common consent among the members a power to redress grievances," and that the cases to which it applies form an "intermediate class between judicial prosecutions and privileged communications in regard to matters having no immediate connection with the functions of government." In the case of *O'Donoghue* v. *McGovern,* however, decided in 1840, the same learned judge repudiates the idea that such a distinction exists. The plaintiff in that case was a priest of the Roman Catholic church, and the charges complained of were contained in a representation to the Catholic bishop of the diocese in which the plaintiff officiated, relating to the plaintiff's character and conduct. In delivering the opinion of the court, Cowen, J. after stating "the extent of the citizen's privilege in addressing the civil power, recognized and established by law," says : " I must be allowed to deny that the law extends any greater measure of protection to a church member, petitioning a spiritual superior. Churches in this country are, in a legal point of view, no more than other societies, voluntarily organized by our citizens, with such gradations of officers and judicatories as may subserve the purposes of

moral and religious redress. The law concedes the right of petition and remonstrance to a spiritual superior, when they are presented with a view to such redress. The proper channel being pursued, as the plea under consideration in the case before us shows that it was, I grant that the church member in question is entitled to the same measure of protection, as if he had, when writing the libel set forth in the declaration, been engaged in seeking the removal of an inferior officer at the hands of a superior, created by the constitution or the law. But I deny that he is entitled to more. The declaration charges him with falsehood and malice; with an intent to injure. Let him deny these in his plea; nay, let him plead mere probable cause, and I will allow his plea, if it be not demurred to as amounting to the general issue; or if a want of probable cause do not appear upon his trial, under the latter plea, I will sanction that as a defense." Again: "I deny that he is entitled to any greater consideration than the members of any other voluntary society holding the same relations, under a similar organization." And further: "The law simply requires that there should not be a want of common honesty in preferring the charge." In *Hastings* v. *Lusk*, in the late court of errors, in this state, decided in 1839, (22 *Wend.* 410,) the then chancellor says: "There are two classes of privileged communications recognized in the law in reference to actions of slander," &c. "In one class of cases the law protects the defendant so far as not to impute malice to him from the mere fact of his having spoken words of the plaintiff which are in themselves actionable, though he may not be able to prove the truth of his allegations. But the plaintiff will be able to sustain his action for slander, if he can satisfy the jury, by other proofs, that there was actual malice on the part of the defendant, and that he uttered the words for the mere purpose of defaming the plaintiff." Again: "The presumption in these cases that there was no malice, is not rebutted by the plaintiff's merely showing that the charge against him was untrue in point of fact; it must be further shown that the defendant either knew or had reason to believe it was untrue, at the time of the speaking of the words complained of." (*Kine* v.

*Sewell,* 1 *Horne & Hurl.* 83 ; 3 *Mees. & Wels.* 297, *S. C.*)
Proving that the defendant knew the charge to be false, would
unquestionably be evidence of *express malice ;* and would de-
stroy the defence in this class of cases. The language of Bron-
son, Ch. J. in *Washburn* v. *Cooke,* (3 *Denio,* 110,) although not
quite so broad as that of the chancellor, falls but little short of
expressing similar views. He went as far as that case required.

I do not feel at liberty to hold that the privilege allowed by
law to the communication in the present case was less in extent
than the privilege allowed to communications to public officers,
as before mentioned. I think it is not, and should not be. I am
therefore of opinion that the ruling at the trial in respect to proba-
ble cause, and the refusal to charge as requested, were erroneous.

Judgment reversed, and a new trial granted. Costs to abide
the event.

[Monroe General Term, March 7, 1853. *Selden, T. R. Strong* and *John-
son,* Justices.]