## CRANE *v.* WATERS and others.

### (*Circuit Court, D. Massachusetts.* February 23, 1882.)

1. LIBEL—PRIVILEGED COMMUNICATIONS.

    In discussing the subject of a scheme or plan for making a railroad by the consolidation of certain short lines, and to obtain control of a certain railroad company by electing directors favorable to the scheme, a public speaker or writer has the qualified privilege which attaches to public affairs.

2. SAME—CHARACTER OF CONSTRUCTOR OF RAILROADS.

    In such discussions the character of the constructor and manager of railroads is open to public discussion when his plans affect many interests besides those of the stockholders of one road.

3. SAME—DISTINCTION BETWEEN PUBLIC AND PRIVATE INTERESTS.

    The distinction between the public and private affairs of a railroad is this: When a railroad is to be built, or a company to be chartered, the question whether it shall be authorized is a public one; but when the company is organized and the stock issued, anything which merely affects the value of the stock is private.

4. SAME—TRUTH AS A DEFENCE.

    In discussions in good faith, of the public conduct and qualifications of public men, the defendant, it appears, is not held to prove the exact truth of his statements and the soundness of his inferences, provided that he is not actuated by express malice, and that there is reasonable ground for such statements and inferences.

Action of Tort for Libel.    On demurrer.

The defendants published in their newspaper, the Boston Daily *Advertiser,* an article concerning an attempt of Edward Crane, the plaintiff, to procure the election of directors of the New York & New England Railroad Company at the then recent annual meeting. The article was entitled "History Repeated," and purported to give a narrative of the dealings of the plaintiff with the Boston, Hartford & Erie Railroad Company by which he had brought it to bankruptcy, and to give the impression that he intended to act in a similar way with the New York & New England, which was a corporation formed by the bondholders of the other road.    The project attributed to the plaintiff included the buying up of certain railroads in Connecticut, consolidating them with the New York & New England Company, etc. It alleged that the plaintiff's schemes were exposed by skilful questioning at the meeting, and that he had retired discomfited.

The plaintiff, in his declaration, set out this article in full, and in the first count alleged damage generally; in the second that he was a manager and constructor of railroads, and was engaged in a business undertaking to make a through line between Boston and New York by the purchase and construction of railroads, and that the New York

& New England Railroad was to be a part of the line; but, by the publication of the libel, he lost the support of some of his associates, and of stockholders of that road, and suffered special damage.

The defendants answered—*First*, that the statements made in the article were true; *second*, that the railroad concerning which the article was written was a public work of great importance to the commonwealth and people of Massachusetts, and in which the commonwealth was a large stockholder; that the other stockholders were numerous, and could only be reached through the press; that the effort of the plaintiff to obtain control of the railroad was a matter in which the public were interested, and was a proper subject of discussion in the newspapers; and that the defendants, believing that such control would be a public misfortune, and would be a serious injury to the railroad and to the public, discussed the plaintiff's plans and qualifications in good faith, and without malice; and that they made only such statements and reflections as they believed, on due inquiry and reasonable grounds, to be true and just, and warranted by the plaintiff's acts. To this second part of the answer the plaintiff demurred.

*A. B. Wentworth* and *F. F. Heard*, for plaintiff.

*Russell & Putnam*, for defendants.

LOWELL, C. J.   For the purpose of deciding this demurrer it must be assumed that the plaintiff had conceived and begun to carry out a plan for making a railroad from Boston to New York by the consolidation of certain shorter lines, and otherwise, and that it was a part of his plan to obtain control of the New York & New England Company by electing directors favorable to his scheme; that the publication of the article complained of interfered with this plan to his prejudice; and that the statements of the article were not true, but were published in good faith, without express malice, and were, upon reasonable inquiry by the defendants, believed by them to be true.

The contention then is, on the part of the defendants, that the subject-matter is one in which the public has an interest, and that in discussing a subject of that sort a public speaker or writer is not bound at his peril to see that his statements are true, but has a qualified privilege, as it has been called, in respect to such matters.

The modern doctrine, as shown by the cases cited for the defendants, appears to be that the public has a right to discuss, in good faith, the public conduct and qualifications of a public man, such as a judge, an ambassador, etc., with more freedom than they can take with a private matter, or with the private conduct of any one.   In

such discussions they are not held to prove the exact truth of their statements, and the soundness of their inferences, provided that they are not actuated by express malice, and that there is reasonable ground for their statements or inferences, all of which is for the jury. *Kelly* v. *Sherlock*, L. R. 1 Q. B. 686; *Kelly* v. *Tinling*, Id. 699; *Morrison* v. *Belcher*, 3 F. & F. 614; *Henwood* v. *Harrison*, L. R. 7 C. P. 606; *Davis* v. *Duncan*, L. R. 9 C. P. 396; *Gott* v. *Pulsifer*, 122 Mass. 235.

Some of the affairs of a railroad company are public and some are private. For instance, the honesty of a clerk or servant in the office of the company is a matter for the clerk and the company only. The safety of a bridge on the line is a subject of public moment. The public, in this sense, is a number of persons who are or will be interested, and yet who are at present unascertainable. All the future passengers on the road are the public, in respect to the safety of the bridge, and as they cannot be pointed out, you may discuss the construction of the bridge in public, though you thereby reflect upon the character of the builder. If this definition of the public is a sound one, the commonwealth, considered as a stockholder, is not the public, for its interests are entrusted to certain officers, who are easily ascertained; nor would the interests of the shareholders become a public matter merely by reason of their number, unless it were proved that it would be virtually impossible to reach them individually. If, therefore, the question were merely of the effect of the scheme upon the shares of the New York & New England Railroad Company, a corporation already chartered and organized, I should doubt somewhat whether it would be of a public nature. But, inasmuch as the project was one which affected a long line of road, as yet only partly built, and the consolidation of several companies, it assumes public importance. Perhaps the right of legislative interference may be taken as a fair test of the right of public discussion, since they both depend upon the same condition. The legislature cannot interfere in the purely private affairs of a company, but it may control such of them as affect the public. It cannot be doubted, I apprehend, that the legislatures of Connecticut and Massachusetts would have power to permit or to prohibit or to modify a scheme such as is now in question. It interests the public, consisting of the unascertained persons who will be asked to take shares in it, and those through whose land it will pass or whose business will be helped or hindered by it, that such a line should be well, and even

that it should be honestly, laid out, built, and carried through. For this reason the character of the plaintiff, as a constructor and manager of railroads, seems to me to be open to public discussion when he comes forward with so great and important a project affecting many interests besides those of the shareholders of one road; and that, therefore, the defendants, or any other persons, have the qualified privilege which attaches to discussions of public affairs. The distinction is this: that when a railroad is to be built, or a company to build it is to be chartered, the question whether it shall be authorized is a public one; when the company is organized and the stock is issued, anything which merely affects the value of the stock is private.

Demurrer to the answer overruled.

NOTE. The privilege which a communication receives arises from a right to say what is complained of, or from a sense of duty, public or private, legal or moral. *Portevin* v. *Morgan*, 10 Low. Com. Jur. 99; see *Streety* v. *Wood*, 15 Barb. 105; *Hanna* v. *De Blanquiere*, 11 Up. Can. Q. B. 310; *Hearne* v. *Stowell*, 12 Ad. & E. 719. Publishing what is true of a person is not an offence if done with good motives and for justifiable ends, (*De Bouillon* v. *People*, 2 Hill, 248,) where the object is to impart useful information to the community. *State* v. *Burnham*, 9 N. H. 34; *Morris* v. *Com.* 1 Va. Cas. 176; *Com.* v. *Clay*, 4 Mass. 163.—[ED.