36 149
138a 523

EMILY HALSTEAD, RESPONDENT, v. EDWARD B. NELSON, APPELLANT.

*Slander — what charge is slanderous* per se *— privileged communications — right of the principal of an institution to lay evidence, bearing on the immoral conduct of a teacher, before the board of trustees.*

On February nineteenth, the defendant, the principal of an institution for deaf mutes, complained to the executive committee of the board of trustees of the institution, that the plaintiff, a teacher therein, had mailed to the defendant's wife a printed paper, recommending and advertising articles for the prevention of conception and for procuring abortions, and stating where the articles could be purchased. The principal was appointed by the board of trustees, and was the executive head of the institution, having power to hire and dismiss employees, subject to the control of the board. The plaintiff claimed that when she appeared before the committee the defendant said, among other things, that he "knew" that the plaintiff wrote and sent the letter. This was denied by the defendant. The plaintiff having been dismissed from

the institution, brought this action against the defendant to recover the damages thereby occasioned, claiming that he himself wrote and posted the letter.

*Held,* that the offense charged was an indictable offense, involved moral turpitude, and was slanderous *per se.*

That it was the duty of the defendant, as principal of the institution, to lay before the trustees the evidence in his possession bearing upon the question as to whether or not the plaintiff committed the offense charged; and that the communication made by him was privileged.

The court was asked to hold that the accusation was *prima facie* privileged, and absolutely so, unless the plaintiff established that it was made without probable cause, and in bad faith or maliciously. The court refused, and charged that " if he did on that occasion unnecessarily interfere and assert what was not true, that it would be a publication, in effect, of this slander, a publication which would be unjustifiable under any circumstances of the case."

*Held,* that the court erred in so charging, as the evidence did not justify an inference that the defendant unnecessarily interfered.

APPEAL by the defendant from a judgment, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

January 19, 1878, some person mailed to defendant's wife a printed paper recommending and advertising articles for the prevention of conception and for procuring abortions, and stating where the articles could be purchased. A few recommendatory words were written in pencil on the paper, and the written and printed matter was signed in pencil, " a lady friend."

The complaint contains three counts : The first charges that the defendant, January 19, 1878, at Rome, New York, falsely and maliciously stated in the presence and hearing of B. J. Beach and others, that the plaintiff mailed the obscene matter to defendant's wife. The second count charges that the defendant, on divers days between January 19, 1878, and May 6, 1878, at Rome, New York, exhibited the obscene matter to divers persons and falsely and maliciously stated to them that plaintiff mailed it to defendant's wife. The third count alleges that the defendant, March 25, 1878, at Rome, New York, and at divers places in Oneida county, New York, falsely and maliciously stated to Mrs. T. M. Davis that the plaintiff mailed the obscene matter to defendant's wife; and also that the defendant, on the same occasion, falsely and maliciously stated to Mrs. Davis that the plaintiff had been guilty of unchaste conduct with men.

The complaint alleges that, by reason of the words spoken and set forth in the first and second counts, she lost a lucrative situation in the Central New York Institution for Deaf Mutes at Rome, New York.

The answer contains (1) a general denial; (2) an allegation that all of defendant's acts and statements in connection with the matter were made in good faith, upon probable cause, upon an occasion and to persons which rendered the acts and statements privileged; (3) mitigatory allegations.

The case shows that the Central New York Institution for Deaf Mutes is a corporation, but when incorporated, or under what law, does not appear. The public statutes of the State show it to be one of the charitable and educational institutions of the State, for the support of which public moneys have been annually appropriated since 1864. (Chap. 213, Laws 1875; chap. 13, Laws 1876, and the annual appropriation acts from 1875 to 1884, inclusive.)

The defendant is, and, since 1876, has been the principal of the institution, and the plaintiff from November 2, 1875, to February 19, 1878 (when she was discharged by the executive committee), was employed in the institution as superintendent of the sewing department.

The affairs of the institution are managed by a board of fifteen trustees, five of whom constitute the executive committee, which exercises the powers of the board when it is not in session. The board of trustees appoints the principal, who is the executive head of the institution, having charge of its internal affairs, with power to hire and dismiss employees, subject, however, to the control of the board. The plaintiff received her appointment from the board of trustees.

Upon the trial the plaintiff gave no evidence tending to establish the second or third cause of action.

To establish the first she testified that February 19, 1879, she was notified to appear at the office of the institution, where she found Mr. Huntington, Mr. Beach, Mr. Bissell (three of the executive committee), and the defendant, and that Mr. Beach then said to Mr. Nelson : " You received this letter about seven o'clock, did you not, Mr. Nelson ? " Mr. Nelson said : " Yes ; it was a dirty, obscene letter, which had cost himself and wife much pain under

the circumstances, and he knew I (plaintiff) wrote and sent it." No other witness testifies to the speaking of these words. At this time the three members of the executive committee met for the purpose of considering whether the plaintiff sent the paper, and whether she should be discharged from her position. The result was that after considering the evidence and hearing her explanation, she was on that day discharged. The defendant testified that he did not speak the words. Mr. Beach testified that the defendant did not make the charge, or anything like it, in substance. Mr. Bissell testified that the defendant did not say, on that occasion, that he knew plaintiff wrote it, or that it gave his wife great pain, and that defendant said nothing of the kind. Mr. Huntington testified that he had no recollection of defendant's saying anything while the plaintiff was present. Mr. McHarg, one of the trustees, was present during a portion of the meeting, and testified : "I do not recollect whether Prof. Nelson said anything at that meeting in my presence."

Mrs. Butcher (formerly Mrs. Davis) testified that on some occasion, the time not fixed, she had a conversation with defendant in a railroad car between Rome and Oneida, in which the following language was used: Witness : "I said I could not believe that Mrs. Halstead sent the letter in question, and Mr. Nelson said : Why, Mrs. Davis, I am positive of it, and I have proof of it that I will show you sometime when you visit the institution." The defendant denied the conversation. The case shows that this evidence was not offered to establish either of the three causes of action, but for the purpose of showing a repetition of the accusation, as evidence of malice and to enhance the damages. Both counsel, in their briefs, concede that the only accusation alleged and proved as a cause of action is the one made before the executive committee.

The plaintiff had a verdict for $1,200, which the defendant moved, upon the minutes, to set aside upon the exceptions taken, because the verdict was for excessive damages, was contrary to the evidence, and contrary to law. The motion was denied and a judgment entered, from which, and the order, the defendant appeals.

*Francis Kernan,* for the appellant.

*W. E. Scripture,* for the respondent.

FOLLETT, J.:

Mailing a circular of the kind described in the statement of facts was, in 1878, an indictable misdemeanor by the laws of this State (chap. 747, § 2, Laws 1872, since made a part of the Penal Code, §§ 318, 319), and by the laws of the United States (U. S. R. S. [2d ed.], § 3893). Charging a person with the commission of an indictable offense involving moral turpitude, is slander *per se*. (*Young* v. *Miller*, 3 Hill, 21; Towns. Sl. and Lib., § 154; Folkard's Starkie on Sland. and Libel, chap. 2, § 44.)

We think it cannot be questioned that the commission of the offense charged involves moral turpitude. Aside from the denial that the words were spoken, the defense rests on the theory that the occasion upon which the words are alleged to have been spoken, as well as the words spoken, were *prima facie* privileged, and that the plaintiff, to recover, must establish that the accusation was made without probable cause, and in bad faith or maliciously.

It was the duty of the defendant, as principal of the institution, to lay before the trustees the evidence in his possession bearing upon the question as to whether the plaintiff did or did not commit the offense; and it was the duty of the trustees to examine the evidence and determine whether she should be continued in the employ of the institution. For the purpose of making this investigation and determination, three of the executive committee met at the office of the institution. The plaintiff and defendant were both before the committee, the evidence was examined and the plaintiff's statement considered. During this investigation it is alleged that defendant said "he *knew* I (plaintiff) wrote and sent it."

Persons vested with the control of public institutions created by law, and having *quasi* judicial duties to discharge in respect to the public, are, while acting within the limits of their functions, *prima facie* exempt from liability for publications which would otherwise be defamatory. (Bigelow on Torts, 60; *Van Wyck* v. *Aspinwall*, 17 N. Y., 190; *Viele* v. *Gray*, 10 Abb., 1; S. C., 18 How., 550; Towns. Sl. and Lib. [3d ed.], § 235 to 239.) The defendant was vested with the control of this institution and its employees, subject to the ultimate decision of the board of trustees or its executive committee; and is within the class of persons whose communica-

tions, made to his superior in the discharge of a duty, are *prima facie* privileged.

The by-laws of the institution provide: " The executive committee shall hold a meeting at the institution on the last day of each month, except when that day falls on Sunday, when it shall be held on the day following." The fact that the meeting of the executive committee was not held on a day fixed by the by-laws did not render the occasion an unprivileged one. There is nothing in the by-laws prohibiting a meeting on any other day; and it would be a strange limitation of the powers of the governing body to hold that, however pressing an emergency might arise, that action must be delayed until the day appointed, and in the meantime, perhaps for a month, the affairs of the institution left to suffer. The trial court held, in effect, and properly, that the occasion was *prima facie* privileged.

The court was asked to hold that the accusation was *prima facie* privileged, and absolutely so, unless the plaintiff established that it was made without probable cause, and in bad faith or maliciously. This the court declined, and charged: " I say that if he did on that occasion unnecessarily interfere and assert what was not true, that it would be a publication, in effect, of this slander, a publication which would be unjustifiable under any circumstances of the case." This was excepted to, and was error. The evidence did not justify an inference that the defendant unnecessarily interfered. He was rightfully present, as an officer of the institution, and had the undoubted right to express his belief, which cannot be properly characterized as an unnecessary interference, or left to the jury to infer that it was; and for this expression of belief he is not liable if he had probable cause for entertaining it.

The fact (if it was a fact) that defendant said " that he *knew* I (plaintiff) wrote and sent it," does not make the accusation abso-lutely an unprivileged one. The defendant could not have been understood to assert that he knew, of his own personal knowledge, that defendant sent it, apart from the evidence before the executive committee, but he must have been understood to mean that he knew, or believed from the evidence then presented, that she sent it. At least, it was error to charge, as matter of law, that defendant, by using the word " knew," intended to assert that he " knew " of

his personal knowledge, apart from the evidence, that she sent it ; and further, that if the jury found that the assertion was made, and that in fact she did not send it, the defendant was liable ; or, in the language of the charge, " privileged communications extend no farther than it is reasonably necessary for the enforcement of the interests of justice or the protection of the rights of the community ; and, therefore, I say that if he did on that occasion unnecessarily interfere and assert what was not true, that it would be a publication, in effect, of this slander, a publication which would be unjustifiable under any of the circumstances of the case."

In *Viele* v. *Gray* (*supra*), the language was : " He is the author of it (an obscene libel); I know it." And it was said upon demurrer, that if the defendant had probable cause for making the charge, it was privileged.

When persons are so circumstanced that it is their right and duty to lay before a governing body of a public institution, rightfully acting in a *quasi* judicial capacity, accusations relating to the conduct and affecting the reputation of an employe amenable to the governing body, they do not lose immunity from liability by reason of general ill-will entertained by the accuser against the accused. If the specific act is an actionable wrong, the accuser is liable, but not without. General ill-will is not actionable, though sometimes evidence of it is admissible to enable a jury to infer that a specific act was prompted by malice. (*Howard* v. *Sexton*, 4 N. Y., 157, 161.)

When the accusation relates to a subject in relation to which the accuser has a duty to perform, and is made to a board of officers whose right and duty it is to act upon the accusation, the accuser is not liable if he had probable cause for making the accusation. (*O'Donaghue* v. *McGovern*, 23 Wend., 26 ; *Viele* v. *Gray*, 10 Abb., 1 ; S. C., 18 How., 550 ; *Howard* v. *Thompson*, 21 Wend., 319 ; *Streety* v. *Wood*, 15 Barb., 105 ; *Cook* v. *Hill*, 3 Sandf., 341 ; *Blake* v. *Pilfold*, 1 M. & Rob., 198 ; Towns. Sl. and Lib. [3d ed.], §§ 235 to 239.) Actions to recover damages for accusations so made, are analogous to actions for malicious prosecution ; and a want of probable cause must be shown. (See authorities last cited.)

The court was asked to charge that if the defendant did not write, send or procure to be written or sent the communication, the plaintiff was not entitled to recover, which was refused and

excepted to. The accusation was made on the communication, the circumstances under which it was received and upon the report of the expert in handwriting. The plaintiff was present, had made her denial and charged that the defendant mailed it to injure her. There was no conflict between witnesses. The evidence upon which the accusation was made was before the court and uncontradicted. When the facts and circumstances on which an accusation is made are undisputed, the question of probable cause is a question of law for the court. The plaintiff's theory was, that defendant sent or procured the communication to be sent for the purpose of accusing the plaintiff and procuring her discharge, and unless this theory was established as a question of fact, the defendant was entitled to a verdict. Unless the defendant sent or procured this communication to be sent, we think the defendant had probable cause for the accusation. This was the judgment of the executive committee, who must be presumed to have been fair-minded men of intelligence, desiring to discharge their duties to the public and persons interested. Probable cause has been defined to be : " The existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." ( *Wheeler* v. *Nesbitt,* 24 How. [U. S.], 544 ; *Mitchell* v. *Wall,* 111 Mass., 492 ; *Carl* v. *Ayers,* 53 N. Y., 14.)

The judgment and order should be reversed, and a new trial granted, costs to abide the event.

HARDIN, P. J., and BOARDMAN, J., concurred.

So ordered.