LEONARD J. KLINCK, Appellant, *v.* GARDNER R. COLBY et al., Respondents.

Defendants having been defrauded of a large amount of goods, by reason of false representations, and having probable cause to believe that plaintiff was a party to the fraud signed a paper, in which they stated they had been " robbed and swindled" by plaintiff and others, and agreed to bear equally the expenses of prosecuting the offenders criminally

*Held*, that the preparation and signing of the paper was a lawful transaction, and it was a privileged communication ; that the terms used, though strong and plain, were not irrelevant, and in the absence of actual malice did not take away the privileged character of the communication.

The exhibition of the paper to an agent of one of the parties defrauded for the purpose of procuring the signature of the principal was privileged.

Where, under section 165, of the Code, defendant in an action of libel or slander pleads the truth of the matter charged as defamatory, and also matters in mitigation, the allegations in justification, although unsustained by proof, are no longer evidence of malice, to be considered by the jury and taken as enhancing plaintiff's damages.

(Argued September 13th, 1871 ; decided November 10th, 1871.)

APPEAL from order of the General Term of the second judicial district, affirming an order of Special Term granting defendants' motion for a new trial.

The complaint in this action contained two counts, one for false imprisonment, the other for libel.

Upon the first count plaintiff was nonsuited upon the trial. The alleged libel consisted of an agreement signed by the defendants, kept by one of them, and shown to no one else, save to Anderson, one of the firm of Smith & Anderson, agents of William Kirk, an alien, and having full charge and complete control of all his business affairs here. It was presented to him as Kirk's agent to procure Kirk's name to the paper. The following is a copy of the agreement:

" We, the undersigned, merchants of the city of New York, who have been robbed and swindled by Ellery C. Folger, Percy W. Tibbs, William C. Williams, James G. Goggin, L. G. Klink, and S. H. Klink, realizing that justice demands, that said parties should be punished for the offences which they have committed, do hereby pledge and agree with each other, mutually, that we will bear equally all expenses and charges which may be incurred in prosecuting, criminally, said Folger, Tibbs, Williams, Goggin, L. G. Klink, and S. H. Klink, or either of them.

"And it is further mutually agreed that we will contribute equally toward the payment of any judgment or judgments,

which may be recovered against any of the subscribers hereto, arising by reason of any criminal complaint which may be or has been made by any of the subscribers herein, against the said Folger, Tibbs, Williams, Goggin, L. G. Klink, and S. H. Klink, or either of them.

" Witness our hands and seals this 30th day November, 1866, at the city of New York."

The defendants and others, merchants in New York, had been defrauded of a large amount of goods by Folger and Tibbs, by means of false representations; and it appeared that defendants had probable cause to believe that plaintiff was a party to the fraud. The alleged libel was drawn up by defendants' counsel, who advised them that the perpetrators of the fraud had committed an offence against the criminal law.

Defendants' counsel, among other things, requested the court to charge, " that the fact that the defendants have pleaded a justification, is not to be taken into consideration in awarding damages." This the court refused to charge, and defendants excepted. The court did charge. " On the present occasion they (defendants) set up in justification that these allegations are true." " I understand the rule of law to be, that the jury are authorized to infer from this fact, that these people were actuated by a desire to injure the plaintiff. The fact of their inserting the libelous matter in the pleadings in connection with the other evidence in the case, warrant the jury to imply a malicious motive on their part." To which no exception was taken. The jury rendered a verdict for plaintiff for $5,000. A motion for new trial upon the minutes was made, which was granted.

*O. L. Stewart,* for appellant. A person who has no interest in the action, cannot unite with others in defraying expenses. (4 Blk. Com., 135; *Tallheimer* v. *Brinkerhoff,* 3 Cow., 623; *Burt* v. *Place,* 6 Cow., 631.) This is not a privileged communication. (1 Phil. Ev., 130; *White* v. *Nicholas,* 3 How., U. S., 266; *Thorne* v. *Moser,* 1 Denio, 488;

*Armsby* v. *Douglass*, 37 N. Y., 477; *Perkins* v. *Mitchell*, 31 Barb., 461, 467; *P. and C. R. R. Co.* v. *Quigley*, 21 How., U. S., 202; *Beardsley* v. *Tappan*, 5 Blatch., 498; *Getting* v. *Foss.* 3 C. & P., 160; *Allen* v. *Crofoot*, 2 Wend., 575.) The libelous words were unnecessary, and are not privileged. (*Gilbert* v. *People*, 1 Den., 41; *King* v. *Wheeler*, 8 Cow., 725; *Hastings* v. *Lusk*, 22 Wend.) Defendants' plea in justification was evidence of malice. (*Root* v. *King*, 7 Cow., 613; *White* v. *Nichols*, 3 How., 226.) The showing the paper to Smith & Anderson was a publication. (*Snyder* v. *Andrews*, 6 Barb., 43; *P. R. R. Co.* v. *Quigley*, 21 How., U. S., 202; *Perkins* v. *Mitchell*, 31 Barb., 461.)

*J. Emott*, for respondents. The paper was a privileged communication. (*Spell* v. *Maule*, 4 R. E. Exch., 232; *Toogood* v. *Spyrng*, 1 Cr. M. &. R., 192; *Whitley* v. *Adams*, 15 C. B., U. S., 392; *Hastings* v. *Lddqh*, 22 Wend., 410; *Vanderzee* v. *McGregor*, 12 Wend., 545; *Washburn* v. *Cooke*, 3 Den., 110; *Liddle* v. *Hodges*, 2 Bos., 587; *Lewis* v. *Chapman*, 16 N. Y., 372.) In such case actual malice must be proven. (*Washburn* v. *Cooke*, 3 Den., 110; *Lewis* v. *Chapman*, 16 N. Y., 372; *Suydam* v. *Moffat*, 1 Sandf., 459; *Street* v. *Wood*, 15 Barb., 105; *Liddle* v. *Hodges*, 2 Bos., 527.) Where words are irrelevant, if believed to be true, no motive of malice. (*Suydam* v. *Moffat*; *Spell* v. *Maule*; *Warren* v. *Paine*, 2 Sand., 195.) Defendants had a right to combine for the purpose contemplated. (2 Russ. on Crimes, 677; 1 Salk., 14 id., 174; *Master* v. *Miller*, 4 F. R., 320, 340; 2 Bish. Cr. L., 87; 2 Hawk. P. C., 124; *Finden* v. *Parker*, 11 M. & W., 675, 682; 2 R. S., 691, § 8; *Mott* v. *Small*, 22 Wend., 403; *Sedgwick* v. *Stanton*, 14 N. Y., 289.) No publication was proven. (*Vanderzee* v. *McGregor*, 12 Wend., 548.)

FOLGER, J. The paper prepared by the former counsel of the defendants and signed by them, in effect denominated the plaintiff a robber and a swindler. When such a paper is

published, it is *prima facie* a libel (*J'Anson* v. *Stuart*, 1
T. A., 748), and the law implies malice in the author and
publisher of it, toward him of whom it speaks. (*White* v.
*Nichols*, 3 How. U. S., 266.) In an action brought upon it,
no proof of malice is needed in the first instance, beyond the
proof of publication itself. (Id.) But when the paper pub-
lished is a privileged communication, an additional burden of
proof is put upon the plaintiff, and he must show the exist-
ence of express malice in the publication of it. (Id.) Hence,
as a general proposition, it may be said that the question of
whether a publication is a privileged communication is one
for the jury. That is to say, the court may determine whether
the subject-matter to which the alleged libel relates, the inte-
rest in it of the defendant, or his relations to it, are such as
to furnish the excuse. But the question of good faith, belief
in the truth of the statement, and the existence of actual
malice, remains; although the court should hold, that *prima
facie*, the communication was privileged. And this question
is one for the jury. (*Cooper* v. *Stone*, 24 Wend., 434; *Brow*
v. *Hathaway*, 13 Allen, 239; and see *Blackburn* v. *Black-
burn*, 4 Bing., 395.) And so also the question, whether the
alleged libel was in fact published, is in general a question
for the jury. (2 Starkie on Slander, Wendell's edition, 17.)

In the case at bar, the learned justice who presided at the
trial, left to the jury only to find the amount of the plaintiff's
damages, and as incidental to that, whether there was also
actual malice. He ruled for the purposes of the trial, that
there was a publication of the paper, and that it was not a
privileged communication. He had a right to rule upon the
question of publication, for the facts in relation to it were
not in dispute. We have seen, that he might to a certain
extent, rule on the question of privileged communication, and
as he decided that it was not a privileged communication,
whether actual malice existed or not, was not then necessarily
to be left to the jury, as affecting that question.

The rulings of the learned justice upon these points at the
trial having been duly excepted to, as appears from the order

made at Special Term, it is now properly before us, to determine, whether he erred at the trial, and was afterward right in reversing those rulings on the motion for a new trial, made upon his minutes.

The first question presented is, was there a publication of the writing?

But as a majority of the court are disposed, to put the decision of this case upon the question of privileged communication alone, it is not necessary to discuss the question of whether or not there was a publication of the alleged libel.

Was the preparation and signing of this paper, so far as its ostensible purpose is concerned, a lawful transaction, and the communication of it by one or some of the signers to others, a privileged communication? That it was, so far, a lawful transaction, we think it beyond doubt.

It is asserted, and not disputed, that the defendants and those in the same predicament, were wronged by means of false representations, of a large amount of goods. These representations were such, as in the judgment of their legal adviser, to be an offence against the criminal law, as well as a wrong to the individual. The learned judge at circuit, as appears from the charge to the jury, ruled as matter of law, that there was probable cause for the belief that the plaintiff was engaged in these transactions.

The purpose of the defendants was, in the main, to agree with one another, to prosecute criminally the plaintiff and others in supposed *pari delicto;* and equally to bear all expenses and charges incurred.

In this, the signers to it, all had a like and peculiar interest. This purpose was lawful not only, but praiseworthy, and the combination was not illegal. (*Regina* v. *Best*, 1 Salk., 174; *Rex* v. *Murray*, Matth. Dig. Cr. Law., 90.)

It is true, as is suggested, in behalf of the plaintiff, that all good citizens have an interest, that a public wrong shall be redressed. And hence he claims, that an especial effort of a few to that end, is not sanctioned. It is not to be ignored however, that the public, except when the higher

and more startling crimes are committed, finds its best aid, in the effort of the individual to punish the public wrong, of which he feels the peculiar smart. And the law itself, relies upon and stimulates private interest as one of its most ready helpers. In the cases last above cited, it is held that several may lawfully meet and consult to prosecute a guilty person, or one against whom there is probable cause of suspicion; and that associations to prosecute felons are lawful. It cannot impair this rule, that those who meet and associate, have felt the wrong as individuals, as well as members of the commonwealth. And it is a perfectly legal and justifiable object, for one to induce another to become a party to a suit, as to the subject-matter in which both have an interest. (*Shipley* v. *Todhunter*, 7 C. & P., 680.)

It appears to us, also, that the communication was privileged. The proper meaning of a privileged communication, is said to be this: that the occasion on which it was made, rebuts the inference arising, *prima facie*, from a statement prejudicial to the character of the plaintiff; and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill will, independent of the circumstances in which the communication was made. (2 Russell on Crimes, 246, margin, 245, 8th Am. ed.; *Lewis* v. *Chapman*, 16 N. Y., 369–373.) Such an occasion, is when a communication is fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. (*White* v. *Nichols, supra; Toogood* v. *Spryging*, 1 C. M., and Roscoe, Exch., 181.) A written communication between private persons concerning their own affairs is *prima facie* privileged. And though all that is said is under mistake, yet the words are not for that reason alone, actionable. (*Howard* v. *Thompson*, 21 Wend., 319; *P. W. & B. R. Road* v. *Quigley*, 21 How. U. S., 202; *Rex* v. *Hart*, 1 Wm. Black., 386.) Where both the party making and the party receiving the communication, have an interest in it, it has

never been doubted that it was privileged. (*Lewis* v. *Chapman, supra.*) For the sake of public justice, charges and communications, which would otherwise be slanderous, are protected if made *bona fide* in the prosecution of an inquiry into a suspected crime. (*Padmore* v. *Lawrence*, 11 Ad. & Ellis, 380.) But it is said, that granting that the purpose was lawful, and the communication in general coming within rules which make it privileged, still the parties have used opprobious terms without need, and so have overstepped their privilege. Any one in the transaction of business with another, has a right to use language *bona fide*, which is relevant to that business, and which a due regard to his own interest makes necessary, even if it should directly or by its consequences be injurious or painful to another; though defamatory comments on the motives or conduct of another do not fall within that rule. (*Tuson* v. *Evans*, 12 Ad. & Ellis, 733.) So that the inquiry is, could the defendants have accomplished their purpose without using words which charged a crime? It is true that they might, without writing the phrase, " robbed and swindled." It is doubtful, however, whether they could without a paraphrase of it, which would have meant the same thing. The object of the paper was to associate under a written agreement, for a criminal prosecution of certain offenders supposed to be guilty of obtaining goods by false pretences. This object could not well be stated, and its prosecution agreed to, without expressing the crime by some designation, and naming the suspected parties. The terms used are strong and plain, it is true. But if there were no actual malice, the use of plain words does not take away the privileged character of the communication. Intent makes the libel in such a case, strong words do not. (*Shipley* v. *Todhunter, supra ; Hastings* v. *Lusk*, 22 Wend., 410, 415, 416.) Thus in *Finden* v. *Westlake* (1 Moody & Malkin, N. P. Rep., 461), it is ruled, that in libel on a handbill, offering a reward for the recovery of certain bills of exchange, and stating that *A. B.* is suspected of having embezzled them, it is a good defence on the general issue,

that it was published solely with a view to the protection of persons liable on the bills, or toward the conviction of the offender. (And see *Brow* v. *Hathaway*, *supra*.) The use of such terms may fairly be urged to a jury, as showing actual malice. But even then a jury should not look too strictly at the particular expressions used, but ought clearly to see that the paper was written with a malicious intent before they find it a libel. (*Woodward* v. *Lander*, 6 C. & P., 548; *Todd* v. *Hawkins*, 8 id., 88.) And it is not with the plaintiff to urge here, that the cause should have gone to the jury on this point.

It is claimed, also, that as Anderson was but the agent of Kirk, and had himself no immediate personal interest in the matter, the exhibition of the paper to him was a publication of it, and was not a privileged communication. To this we do not assent. Anderson was in this country, an agent of Kirk, in another. He had complete control of Kirk's affairs here. He had, for instance, express power to employ agents and servants. If these defendants had gratuitously written to him of any person, that he was not worthy and had embezzled, it would have been libelous. If, however, Ander-son had asked of them that person's character, with a view to employing him, writing thus in answer, if without malice, would not have been libelous; because Anderson had an interest and a proper motive in making the inquiry, and they a proper motive in replying to it; and this, though Ander-son acted only for the protection of Kirk's interests in his hands. In the case in hand, Anderson holds no different position. The defendants go to him, as Kirk's agent, for Kirk's name to the paper, it being upon a matter in which they and Kirk have an interest, which interest of Kirk it is Anderson's duty to guard. Anderson stands in the place of Kirk, and as, conceding that it would have been a publication to Kirk, still it would have been privileged; so it is privileged to Anderson.

But it is claimed that there was express malice shown, and that the jury have found that it existed. We are not able to find in

the oral testimony any proof of express malice. The plaintiff claims that it is in the testimony of two of the defendants. He reads their testimony to the effect that their object in the drafting and signing of this paper, was to collect their money from the plaintiff and others, and to get their goods back. If it be conceded that such is the purport of the testimony, yet such a purpose, under the circumstances of the case, would not in our judgment, show malicious feeling. And we do not find in their testimony, that which amounts to the avowal of such a purpose, in the use of this paper.

But the answer of the defendants, sets up the truth of the statements as a justification for making them. On the trial, however, no attempt was made to sustain these allegations by proof.

It is claimed that this was evidence for the jury of express malice in the defendants, and that it enhanced the damages of the plaintiff. It must be conceded, that independent of statute, such is the rule in this State. (See *Bush* v. *Prosser*, 11 N. Y., 347, 350, 366, and cases cited; *King* v. *Root*, 4 Wend., 139; *Fero* v. *Ruscoe*, 4 N. Y., 162.)

It is claimed, however, that this rule has been changed in this State by legislation. It is said that section 165 of the Code has abrogated it. It is provided in that section, that in actions for libel or slander the defendant may in his answer, allege both the truth of the matter charged as defamatory and any mitigating circumstances to reduce the amount of damages, and that whether he prove the justification or not, he may give in evidence the mitigating circumstances.

This section, it is judicially determined, does abrogate another rule which had been as well established, viz.: that though a defendant might give in evidence in mitigation of damages, facts and circumstances which tended to disprove malice by showing that the defendant though mistaken, believed the charge to be true when made, yet if the facts and circumstances offered, tended to establish the truth of the charge, or formed a link in the chain of evidence, going to make out a justification, they were not admissible, even in

mitigation of damages. (See *Bush* v. *Prosser, supra,* and cases there cited.) It is not consistent that if the defendant was in fact moved by malice in making the statements, he should be allowed to mitigate by exculpatory evidence, the damages which the plaintiff has sustained thereby. It follows that where he has pleaded the truth of his charges in justification of making them, and also matters in mitigation, as allowed by the Code to do, the answer of justification, though unsustained by proof, can no longer be taken as *conclusive* evidence of malice against him, and as aggravating the plaintiff's damages. For the principle upon which the defendant may mitigate the damages, or in other words, lessen the amount, which shall be recovered against him, for an act of his which he cannot justify, is that though wrong, he was mistakenly and thus perhaps innocently, wrong. But if he was malicious, he could not be innocent, even if mistaken. How then if the answer of justification unproved, shows malice *conclusively,* can the defendant disprove that conclusion, by showing facts in mitigation ? It follows, to my apprehension, from the section of the Code referred to, and the decision in *Bush* v. *Prosser* (*supra*), that where facts in justification of a libel, and facts in mitigation of the damages therefrom are pleaded in the same answer, that the allegations in justification, though unproved, are no longer evidence of malice to be considered by the jury, and taken as enhancing the damages of the plaintiff. And such is the answer in the case at bar.

But as at the trial the answer of justification was put to the jury as evidence of malice, the jury would have been warranted in finding under that instruction, that there was express malice in the defendants. And if the jury so found, then the communication cannot be defended as privileged. For the defendants did not except to this instruction, and it was at the trial unchallenged as the law of the case.

It is claimed that the jury have so found. It is to be noticed, however, that the instruction to the jury was not, that the justification pleaded and not proven, was conclusive

evidence of malice, but was a fact from which they might infer a desire in the defendants to injure the plaintiff, and imply a malicious motive on their part. So that the jury were not necessarily forced by this instruction, if they found at all for the plaintiff, to find actual malice in the defendants. There seems no other ground for the claim that the jury did find express malice, than that the discretion so to find was committed to them by the court; and that they have found a verdict for more than nominal damages. It is to be noticed, however, that the court also told the jury, that it was their duty to award some damages; that the plaintiff had a legal right to recover such an amount, as would compensate him for the actual injury which he had sustained; that beyond that they might give him punitive and exemplary damages, as might seem warranted by the facts of the case; that if the defendants were not actuated by malice, this would go very far to mitigate the amount; and if they acted on an honest belief, justified by the facts, it ought to go very far to mitigate any punitive and exemplary damages; that in case of honest mistake, not actuated by malice, while the parties should make ample compensation, and the damages should be in proportion to the injury received; yet if the jury thought themselves warranted in going beyond that, and giving punitive damages, their discretion should be very much restrained as to the amount. From these instructions the jury could well understand, that though they should not find express malice, but a case of honest mistake, not actuated by malice, still they might feel warranted in giving punitive damages, beyond ample compensation, for injuries received. The jury gave $5,000 damages. If we call this amount punitive and exemplary, are we able, under these instructions, to say that it was based upon a finding of actual malice? We think not.

But further than this. In an action for libel, where, under an answer proper to that end, the defendant has shown that the communication was privileged, his further answer of justification by the truth of the charge, though

without proof given to sustain it, may not be taken into consideration as evidence of malice, and in aggravation of the damages. (*Wilson* v. *Robinson*, 7 Q. B. Ad. & Ellis, N. S., 68.) The jury may not look for the actual malice which shall nullify the privilege, in the fact that the defendant has put upon the record a justification which he has not attempted to sustain. It is true, as before noticed, that the jury were told, that they might take this answer into consideration as evidence of malice; which instruction was not excepted to. But this instruction was given after it had been ruled by the court, that the alleged libel was not a privileged communication, which last ruling was excepted to. And that exception makes available, in behalf of the defendants, the rule above stated from *Wilson* v. *Robinson*. We conclude, then, that the learned justice erred at the trial in holding, that the communication was not a privileged one; and that his holding upon the law was not afterwards remedied by any fact found by the jury.

We conclude that the order granting a new trial to the defendants, on account of that error, and the judgment of the General Term affirming that order were correct, and the plaintiff, the appellant, having given the stipulation required on appeal, there should be judgment absolute for the respondents, with costs.

All the judges concurring, judgment accordingly.