Landis v. Campbell.

LANDIS v. CAMPBELL *et al.*, *Appellants*.

1. **Decisions of Church Judicatories:** CONSTITUTIONAL LAW. It is the established doctrine that in matters purely ecclesiastical, not affecting property rights, the decisions of the proper church judicatories made in good faith, are conclusive upon civil tribunals. The provision of the constitution, (§ 10. art. 11,) that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character" in no manner alters this rule. It means only that for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy.

2. ——: CASE ADJUDGED: LIBEL. The plaintiff, a member of the Presbyterian Church, was tried by a session of the church in his absence and without notice to him, upon a charge preferred by the pastor, who was a member of the session, that plaintiff had made false and defamatory statements concerning the pastor, and he was

28—79

excommunicated by resolution of the session. *Held*, that unless the charge was false and the members of the session maliciously, falsely or colorably made the proceedings against plaintiff a pretense for covering an intended scandal, they had not laid themselves open to an action for libel.

3. ——: ——: PUBLICATION OF LIBEL. The clerk of the session entered the resolution of excommunication and a preamble accompanying it upon the minute book of the session, exhibited them to members of the session for their signature, and sent plaintiff a written copy, and the pastor read both preamble and resolution to the congregation in church. *Held*, that these acts did not of themselves amount to a publication of a libel, or furnish a foundation for an action against either clerk or pastor.

*Appeal from Buchanan Circuit Court.*—HON. J. P. GRUBB, Judge.

REVERSED.

*B. F. Stringfellow* and *Judson & Motter* for appellants.

*Ramey & Brown* and *Woodson, Green & Burnes* for respondent.

HENRY, J.—Plaintiff commenced this action in the circuit court of Buchanan county against defendants Campbell and Sanders and Thos. E. Tootle, to recover damages for an alleged libel, charged to have been published by them.

The petition alleged that plaintiff was a member of the First Presbyterian Church of St. Joseph, Missouri, and that defendants falsely, maliciously, etc., published of and concerning him, the libelous matter, consisting of a preamble, in which it was stated that plaintiff had made false and malicious statements concerning the pastor of that church, Campbell, and a resolution suspending plaintiff from the communion of the church. In a second count, omitting the formal parts, it was alleged that defendants published of and concerning plaintiff a certain other libel, consisting of the following: "You, meaning plaintiff, were by unan-

imous vote excommunicated." "Resolved, That Israel Landis be excommunicated."

Defendants filed separate answers, to the effect that defendant Campbell was pastor of said church, and that he and his co-defendants and other parties named, were pastor and ruling elders of said congregation, and composed a judicatory known as the church session, which, by the laws of the church, has jurisdiction to admonish, rebuke and excommunicate members of said church, found by them to be deserving of censure; that to this session defendant Campbell reported that plaintiff had made false and defamatory statements in regard to Campbell; that the session, at a regular meeting, in the performance of its duty in the regular administration of church discipline and according to the usages and practices of the church, without any malice toward plaintiff, and believing it within the scope of official duty, having found plaintiff deserving of censure, adopted said preamble and resolutions, which were entered upon its record book. It is also alleged that there was another judicatory of said church, known as the presbytery, to which plaintiff had a right to appeal from the decision of the session, but that, although notified of his suspension, he failed to prosecute an appeal. The same is in substance the answer to the second count, and the several answers of the other defendants do not differ materially from that of Campbell in the points which we shall consider.

It appears from the evidence that plaintiff had no notice that charges would be or had been made against him to the session, nor was he present at the investigation. The evidence was conflicting on the question of veracity between plaintiff and the pastor, and we refrain from expressing an opinion as to the weight of evidence.

What plaintiff relied upon as a publication of the alleged libel mentioned in the first count, was a reading of the same from a copy by the pastor to the congregation, the entering the same on the session minutes and exhibiting them to the members of the session, by its clerk, to get

their signatures to them.   What plaintiff insists was a pub-
lication of the alleged libel in the second count, was the
adoption of the same by the session, recording it upon its
minute book, the oral announcement of the expulsion of
plaintiff by the pastor to the congregation, a written copy
of the proceedings furnished to plaintiff by Sanders as clerk
of the session, and the exhibition of the proceedings to
McDonald and Hulett, members of the session, in order to
procure their signatures to the same.

There was a mass of evidence read to the jury, con-
sisting of extracts from the constitution of the church and
digests of its laws, and adjudications thereon, in relation
to the judicatories of the church, which the court left it to
the jury to expound for themselves.   If the civil courts
take it upon themselves to administer the law of a church
their duty is to inform the jury what it is, and not to leave
them to grope through the judicial literature of the church
to ascertain it.

The main objection to the action of the session is its
proceeding to investigate the charges against plaintiff, in
his absence, without notice to him; and the court, in the
instructions to the jury, adopted the view that this irregu-
larity rendered the action of the session void, and that,
therefore, it afforded defendants no defense to this suit and
obviated the necessity of proving express malice against
defendants.   The court, among others, gave the following
instructions at plaintiff's instance:

5.   If the jury believe from the evidence that the ses-
sion of the First Presbyterian Church convened on the 31st
day of October, 1877, had no right, under the constitution
of the Presbyterian Church in the United States, to sus-
pend Israel Landis, the plaintiff, from the communion of
said church, and adopt a preamble alleging that he had been
guilty of malicious falsehood, without giving said Landis
any notice that they intended to proceed against him as a
member of the First Presbyterian Church in St. Joseph, for
any violation of the constitution or discipline of the Pres-

byterian Church in the United States, and that defendants, in conjunction with other members of the session of the First Presbyterian Church, did adopt a preamble and resolutions finding that said Israel Landis had been guilty of malicious falsehood, and suspending him from communion with said church, and all without notice to said Landis; and that said session of said church, on the 31st day of October, 1877, in conjunction with the defendants, agreed that the alleged libel set out in the first count of plaintiff's petition, should be read at a public meeting on the following Friday evening by the defendant Campbell, and that said alleged libel was read by the direction of said defendants; then the fact that defendants claim to have been acting in an official ecclesiastical capacity, furnishes no excuse for such publication.

10. If the jury believe from the evidence that the paper writing set forth in the second count of the plaintiff's petition was the result of a concerted writing and agreement of and between the members of the session in proof, including the defendants, and that it was a part of said agreement that it should be read or announced publicly in the church, and that the same was so announced, and that the said paper writing was by the defendants, or either of them, with the consent or direction of the other, shown or read to any one, then such acts were sufficient publication of said paper writing by defendants.

The civil courts cannot review the decisions of ecclesiastical judicatories in matters properly within their province under the constitution and laws or regulations of the church. *Harmon v. Dreher*, 1 Speers Eq. 87; *Robertson v. Bullions*, 9 Barb. 134; *Shannon v. Frost*, 3 B. Mon. 261; *German Reformed Church v. Seibert*, 3 Barr (Pa.) 282; *State ex rel. v. Farris*, 45 Mo. 183; *Watson v. Garvin*, 54 Mo. 364. In *Shannon v. Frost*, the court said: "Whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court.   *   *   We can-

1. DECISIONS OF CHURCH JUDICATORIES: constitutional law.

not decide whether the excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church." "This court having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline or excision." In *Harmon v. Dreher*, the court held that " a civil court will not look into the regularity of the process by which an ecclesiastical body proceeds to judgment." These cases and observations are cited with approval in the *State ex rel. v. Garris*, 45 Mo. 183, and in *Watson v. Garvin*, 54 Mo. 364. This court, Bliss, J., observes: "In all the cases we find it first everywhere taken for granted, and it must necessarily be so under our system, that in matters purely ecclesiastical, not affecting property rights, the decisions of the proper church judicatory are conclusive upon civil tribunals. They will neither inquire into their correctness, nor question their accuracy." And this was substantially reiterated by Judge Adams in delivering the opinion of the court, on a motion for rehearing, in the same cause, in which he said : "In matters purely religious or ecclesiastical, the civil courts have no jurisdiction." In the case of the *German Reformed Church v. Seibert*, 3 Barr 282, Seibert was expelled from the church by the consistory without the consent of the congregation, which was required by the articles of the church discipline, and the court held that "the decisions of ecclesiastical courts, like any other judicial tribunal, are final, as they are the best judges of what constitutes an offense against the law of God and the discipline of the church," and, " granting that the consistory had proceeded to disfranchise the relator without the consent of the congregation, the remedy is by appeal to a higher tribunal." When property rights are involved in the decisions of the church judicatories, such decisions may be reviewed by the civil courts, when properly brought before them. *Watson v. Garvin, supra.*

It is contended by respondent's counsel that section 10, article 11 of the constitution of Missouri, requiring the

civil courts to take cognizance of all cases of injuries to person, property or character, gives those courts jurisdiction of such actions as this. It simply declares that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character." Persons who join churches, secret societies, benevolent associations or temperance organizations, voluntarily submit themselves to the jurisdiction of those bodies, and in matters of faith and individual conduct affecting their relations as members thereof, subject themselves to the tribunals established by those bodies to pass upon such questions, and, if aggrieved by a decision against them, made in good faith by such judicatories, they must seek their redress within the organization, as provided by its laws or regulations. If the civil courts should assume jurisdiction to review such proceedings upon alleged errors, they would attempt to administer laws not recognized by the constitution or laws of the State, of which it may be said, without disparagement to the judiciary, they may be as ignorant as the most illiterate member of the association. Actions for libel and slander would crowd the docket of the civil courts, which would, on that theory, be open to the complaint of every man expelled from a church, or masonic or odd fellows lodge or temperance society, and every woman excluded from any of the societies of which this age is so prolific. Every such expulsion involves, to some extent, a charge of moral turpitude or conduct unbecoming a gentleman or lady. The constitutional provision has no such scope as this, and means only that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy.

It follows from the principles announced in the above cases, that if a judicatory of a church has jurisdiction, by 2. ——: case ad-  its laws, to try a member for an offense judged; libel.  involving immorality, its decision is final, and not subject to be reviewed by the civil courts for alleged errors; that the civil courts will not examine into the ques-

tion of errors in the proceeding, but give it the same force and effect as if it had been regular in every respect, and, therefore, instructions number five and ten, given for plaintiff, are erroneous. The acts of the session in suspending and expelling plaintiff afford a complete defense to this action, unless the charges against plaintiff were false, and the members of the session maliciously and falsely, or colorably made such proceedings a pretense for covering an intended scandel. *Farnsworth v. Storrs*, 5 Cush. 412; *Streety v. Wood*, 15 Barb. 105; *Shurtleff v. Stevens*, 51 Vt. 514; s. c., 31 Am. Rep. 698. And the burden of proving express malice is upon the plaintiff. *Shurtleff v. Stevens, supra;* Townshend on Slander, 386; 2 Addison on Torts, 931; *Bradley v. Heath*, 12 Pick. 163; *Van Wyck v. Aspinwall*, 17 N. Y. 190; *Lewis v. Chapman*, 16 N. Y. 369; *Vanderzee v. McGregor*, 12 Wend. 545; *Klink v. Colby*, 46 N. Y. 427; s. c., 7 Am. Rep. 360.

The reading the preamble and resolutions of suspension was a publication within the meaning of that term, as

3. ——: ——: publication of libel. employed in relation to libels; but when a member has been excommunicated, it may be promulged by the pastor by reading the resolution of expulsion in the presence of the congregation, according to the practice of the church, and that act will, of itself, furnish no foundation for an action against him. *Farnsworth v. Storrs, supra.* The court properly instructed the jury that neither the entry upon the book kept by the sessions for that purpose, of the resolution of suspension and excommunication nor the announcement of the latter to the congregation by Campbell, was a publication of either of the alleged libels, but should also have included in the instruction the preamble to the resolution of suspension. It also correctly declared that the writing and sending of the letter in evidence by defendant Sanders to plaintiff was no publication of the libel, but erred in declaring that his exhibition of the paper to Hulett and McDonald, members of the session, for their signatures, was a publication.

There was no evidence that Sanders, or any one else, exhibited the resolution to any one except McDonald and Hulett, members of the session, and the testimony was that it was shown to them only to procure their signatures to the paper, as members of the session.   That this was not a publication see *Vanderzee v. McGregor*, 12 Wend. 545; *Klink v. Colby*, 46 N. Y. 428; *s. c.*, 7 Am. Rep. 360; *Lewis v. Chapman*, 16 N. Y. 369.

We have not deemed it necessary to notice particularly the instructions refused or given.   We think that the court, on a new trial of this cause, can determine, by what is contained in this opinion, which should have been given and which refused.   There is a mass of testimony in relation to the jurisdiction of the several judicatories of the Presbyterian Church, and their modes of procedure, which we do not deem it necessary to notice, except to say that it was clearly shown that the session had jurisdiction to try the plaintiff on the charges preferred, and that he had an appeal to a higher tribunal in the church from its decision against him.

All concurring, the judgment is reversed and the cause remanded.

*A motion for rehearing was overruled.*