# 474                         SCHUYLER v. BUSBEY.

Jacob C. Schuyler, Respondent, v. Hamilton Busbey and Another,
Appellants.

*Newspaper libel — privilege, absolute or conditional — malice, actual and presumed —
questions for submission to the jury.*

When, in an action brought to recover damages for the publication of a libelous
article in a newspaper, the evidence shows that the publication was made with-
out examination or inquiry, and the only excuse advanced by the defendant
is that the article was absolutely or conditionally privileged and was published
in good faith, without an intention to injure the plaintiff, on the assumption,
without inquiry, that it was true, it is not error for the trial court to refuse to
instruct the jury to find a verdict for the defendant, on the theory that the
publication was absolutely privileged, or to refuse to instruct them to find a
verdict for the defendant unless they were satisfied that the publication was
malicious, on the theory that the publication was conditionally privileged.

*Semble*, that a newspaper is not justified in publishing false, libelous and defam-
atory matter concerning a person, published regardless of the injury that it
may do to the person unjustly defamed, without inquiry, or taking any means
to ascertain the truth thereof, and in thereafter claiming that the same is
privileged because received from a correspondent.

In case of the publication of a libel, the question of actual malice is to be sub-
mitted to the jury only where the question of an absolute or qualified privilege
is present, and where, in order to recover, the plaintiff is obliged to
prove actual malice ; where such question of privilege is not present malice
is presumed, and proof by the defendant of no actual malice does not
present an issue of fact for the consideration of the jury upon which the
plaintiff, in order to recover, must sustain the burden of showing actual malice,
though the absence of such malice may be considered in mitigation of damages.

Appeal by the defendants, Hamilton Busbey and Leslie C. Bruce,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the city and county of New
York on the 5th day of December, 1892, upon a verdict for
$2,500 rendered at the New York Circuit, and from an order made
and entered on the 6th day of December, 1892, denying the defend-
ants' motion for a new trial made upon the minutes.

The action was brought to recover damages for a libelous article
published in the defendants' newspaper.

*H. M. Whitehead*, for the appellants.

*De Witt C. Brown*, for the respondent.

O'Brien, J. :

The defendants were publishers of a weekly newspaper in this city, known as the *Turf, Field & Farm*, which was devoted to field sports, bench shows, public discussions in reference to dogs, breeding of horses, and other kindred subjects. The plaintiff was, at the time of the publication complained of, engaged in business as a trainer of sporting dogs in the State of Virginia. On December 14, 1888, the defendants published a communication received from one of their correspondents, headed, " A Kennel to Avoid," which among other things contained the following statement:

" We have in my county a man by the name of Jacob C. Schuyler, hailing from Lehistown, Pa., and who has established what he terms a training kennel, and with a great flourish claiming the name for it as ' The Tammany Training Kennels, by Professor Schuyler.' Upon my honor as a man and my character and reputation as a sportsman, I denounce this man as a consummate and unmitigated humbug, and his kennel as a pesthouse, from which the dogs are weekly dragged out to rot upon the highway.

" He has several dogs of his own, which he obtained fraudulently, upon whom he lavishes all his attention, care and feed, while those of his customers are left to starve, to languish and die. If the statutes of our State recognized dogs as property, I could convict him of offenses which would send him to the penitentiary in forty-eight hours.

" His terms are so much money down, $15 or $20, and then so much per month. He receives his first payment and that is pretty generally the last of the dog, though in several instances the fact has reached my ears that he continued to receive the monthly payments months after the dog was dead and forgotten."

This publication the plaintiff alleged was made concerning him in connection with his business and was a " false, scandalous, malicious and defamatory article." The answer admitted the publication and the falsity, but denied that it was scandalous, malicious and defamatory, and by way of defense and in mitigation of damages alleged that the communication was received from a person with whom they had been in correspondence for more than twenty years, on whom they had a right to rely; that they published the same in good faith, believing it to be true, and that on their attention being called to it

by the plaintiff, ample opportunity was afforded him through the columns of the paper to rectify whatever injury was done by the publication, and that in pursuance of this permission the defendant used the columns of the paper, presenting testimonials and letters from many persons testifying to his good character and to his business ability.

During the progress of the trial the plaintiff was asked what became of his business after the publication. He had begun his answer when he was interrupted by the objection of the defendants, that there was no allegation in the complaint that the publication was false, and upon the further ground that, as the business was one relating to dogs and the training of dogs, which at common law were not deemed to be property, that with respect to that business one could not be libelled. The court in sustaining the objection said:

"As to the first ground it is neither necessary to plead nor prove special damages, inasmuch as this is a case in which exemplary damages would necessarily follow unless the libel was excused or justified. For that reason I do not think it necessary to go into this proof. I think it is immaterial, and that it is sufficient to dispose of the objection."

Although the ruling was in the defendants' favor, they excepted thereto, and upon this appeal claim that they were injured by the statement of the reasons given by the court in ruling in their favor. It is conceded by the defendants that if there was any error in this statement of the law, it was subsequently cured by the charge of the court in submitting the case to the jury, and we fail to see, under those circumstances, how the defendants can avail themselves of the exception taken to a ruling or the judge's reasons therefor in their own favor. Counsel also is mistaken in his position that the complaint did not allege that the article was false, because, as we have already said, it was specifically stated therein to have been false, and this allegation of falsity was not denied by the answer.

No other exceptions were taken to the ruling of the court upon the evidence, and all the other questions raised are those presented by an exception to one statement of the judge and refusals on the part of the judge to charge certain requests presented by the defendants, many of which, relating as they do to the same subject-matter, may be grouped and disposed of together.

It is insisted that the publication was either absolutely or conditionally privileged, and upon the theory that the evidence justified the court in holding that it was absolutely privileged, that it was error to refuse to instruct the jury that they must find a verdict in favor of the defendants, and that, though the evidence may not have gone to the extent of showing that it was absolutely privileged, there being no question but that it was conditionally privileged, the court was bound to instruct the jury to find a verdict in favor of the defendants unless they were satisfied that the publication on the latter's part was malicious.

We do not think either of these positions is sound. As remarked in *Klinck* v. *Colby* (46 N. Y. 431): "As a general proposition it may be said that the question of whether a publication is a privileged communication is one for the jury. That is to say, the court may determine whether the subject-matter to which the alleged libel relates, the interest in it of the defendant, or his relations to it, are such as to furnish the excuse."

This view is not at variance with the rule laid down by textwriters that "it is the province of the judge to decide whether a communication is privileged or not when the facts are undisputed. If, therefore, although the defendant alleges that he acted under an honest sense of duty, the judge can see no evidence of any circumstances raising such a duty, he should rule that no *prima facie* case of privilege has been established." (Odger's Law of Libel & Slander [2d ed.], 216.)

The evidence here showed that without examination or inquiry the publication was made, and the only excuse advanced was that it was published in good faith without an intention to injure the plaintiff, on the assumption, without inquiry, that it was true.

In *Moore* v. *Francis* (121 N. Y. 207), what was said with respect to such an excuse will apply here : "The evidence renders it clear that no actual injury to the plaintiff was intended by the defendants, but it is not a legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives, or in an honest belief in its truth." We have been referred to no authority, nor do we think that one can be produced, going to the length of holding that a newspaper is justified in publishing false, libelous and defamatory matter concerning a person, without inquiry or taking any

means to ascertain the truth thereof, and thereafter claiming that the same is privileged because received from a correspondent and published regardless of the injury that it may do to the one unjustly defamed and injured.

*Moore* v. *Francis* (*supra*) is also authority for the proposition that, "in actions for libel, where the publication is admitted, and the words are unambiguous and admit of but one sense, the question as to whether they are libelous is one of law, which the court must decide;" and that it is only where the publication is privileged that the burden is upon the plaintiff to show the existence of express malice in the publication of it; that otherwise no proof of malice is needed in the first instance. While, therefore, privilege rebuts the presumption of malice and shifts the burden so as to require proof of actual malice, it does not from this follow that, in a case where the publication is not shown to have been privileged, the defendants can entirely escape the results or consequences of a libel by showing that there was no actual malice present. A failure to note the distinction and appreciate the difference between malice presumed and actual malice as related to libel is very apt to produce confusion.

In *Lewis & Herrick* v. *Chapman* (16 N. Y. 372), it is said : "Malice is essential to every action for libel. It has been sometimes divided into legal malice, or malice in law, and actual malice, or malice in fact. These terms might seem to imply that the two kinds of malice are different in their nature. The true distinction, however, is not in the malice itself, but simply in the evidence by which it is established. In all ordinary cases, if the charge or imputation complained of is injurious, and no justifiable motive for making it is apparent, malice is inferred from the falsity of the charge. The law in such cases does not impute malice not existing in fact, but presumes a malicious motive for making a charge which is both false and injurious, when no other motive appears. Where, however, the circumstances show that the defendant may reasonably be supposed to have had a just and worthy motive for making a charge, then the law ceases to infer malice from the mere falsity of the charge, and requires from the plaintiff other proof of its existence. It is actual malice in either case. The proof only is different."

This statement, particularly that portion which says that "it is

actual malice in either case," is hardly exact. A more correct statement of the rule as to malice and its bearing upon actions for libel, is to be found in the dissenting opinion in the case of *Samuels* v. *Evening Mail Association* (9 Hun, 294), which was adopted by the Court of Appeals in disposing of that case, in 75 N. Y. 604. As therein said : " The plaintiff in an action of libel gives evidence of malice whenever he proves the falsity of the libel. It becomes then a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages, and that question is not to be taken away from the jury because the defendant gives evidence which tends to show that there was in fact no actual malice. When he gives no such evidence, it is the duty of the court to say to the jury that upon proof of the falsity of the libel the plaintiff is entitled to exemplary damages, in their discretion " (citing cases). " But where he gives evidence tending to prove the absence of actual malice, then it is the duty of the judge to submit to the jury the question as one of fact, whether such malice existed in the publication."

This same view is well expressed by Odger on Libel and Slander (p. 3, 2d ed.), wherein it is said : " The intention or motive with which the words were employed is, as a rule, immaterial. If the defendant has in fact injured the plaintiff's reputation, he is liable, although he did not intend so to do, and had no such purpose in his mind when he spoke or wrote the words. Every man must be presumed to intend and know the natural ordinary consequences of his acts ; and this presumption (if, indeed, it is ever rebuttable) is not rebutted merely by proof that at the time he uttered or published the words the defendant did not attend to nor think of their natural or probable consequences, or hoped or expected that those consequences would not follow. Such proof can only go to mitigate the damages." The author, Odger, in support of this view, quotes from Lord BRAMWELL, in *Abrath* v. *Northeastern Ry. Co.* (11 App. Cas. 253, 254 ; 55 L. J. [Q. B.] 455 ; 55 L. T. 65), as follows : " That unfortunate word 'malice' has got into cases of actions for libel. We all know that a man may be the publisher of a libel without a particle of malice or improper motive. Therefore, the case is not the same as where actual and real malice is necessary. Take the case where a person may make an untrue statement of a man in

writing, not privileged on account of the occasion of its publication, he would be liable, although he had not a particle of malice against the man." But a plaintiff may, for the purpose of enhancing his damages, allege and prove that the defendant made the publication by reason of personal ill-will towards the plaintiff. This is particular, not general, malice, which is what the law presumes.

As already said, therefore, the question of actual malice is to be submitted only in those cases where the question of an absolute or qualified privilege is present, and where, in order to recover, the plaintiff is obliged to prove actual malice. In other cases it is presumed, and proof by defendants of no actual malice does not present an issue of fact for the consideration of the jury upon which the plaintiff in order to recover must sustain the burden of showing actual malice, though it is proper that absence of such malice may be considered in mitigation of damages.

This view, we think, is supported by the case of *Moore* v. *Francis* (*supra*) which holds (head-note) that "words written or spoken of a man in relation to his business or occupation which will have a tendency to hurt or are calculated to prejudice him therein, are actionable, although they charge no fraud or dishonesty, and were uttered without actual malice; and when proved, unless the defend-ant shows a lawful excuse, the plaintiff is entitled to recover, without allegation or proof of special damage, as both the falsity of the words and resulting damage are presumed."

The numerous requests made in regard to the measure of damages were properly refused by the court. Many of them were abstract propositions of law, in no way applicable to the case at bar, and many of them were repetitions of propositions already charged by the court, and some again were propositions of what counsel thought the law ought to be, and not what the law is. The testimony adduced on behalf of the defendants as to the circumstances under which the publication was received, and the absence of any feeling towards the plaintiff or bad faith in the publication, and the opportunity afforded to repair the damage done by inserting in the columns of the paper in its subsequent issues, testimonials and certificates from those who knew the plaintiff, certifying to his character, was all dwelt upon by the judge in his charge and submitted to the jury as facts to be taken into consideration upon the

question of mitigation of damages. And the court was not called upon, nor was it bound, to charge over again separately as to each particular piece of evidence, or on each particular subject, when it had once clearly and explicitly charged, as favorably as the defendants had a right to expect, the very same propositions.

Upon an examination of the entire record, therefore, and the many questions presented by these requests, we fail to see that any error sufficient to authorize a reversal of the judgment was committed, either upon the question of the defendants' liability for the publication or the extent of the damages for which they were liable by reason thereof. Nor do we think, considering the character of the publication, that the damages awarded can be regarded as so excessive as to justify our interfering with the verdict of the jury.

We are of opinion, therefore, that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.