James S. Brown, J.
In this action for libel and slander defendants move for summary judgment pursuant to rules 113 and 114 of the Buies of Civil Practice, on the ground that the answer of the defendants sets forth the defense of qualified privilege, which defense, they contend, is sufficient as a matter of law, since it is founded upon facts established prima facie by documentary evidence or official records. They allege that it is a complete defense to all the various causes of action because of the relationship of the parties and the circumstances under which the communications complained of were made.
In Klinck v. Colby (46 N. Y. 427, 433-434) Judge Forger defined a privileged communication as follows: ‘ ‘ The proper meaning of a privileged communication, is said to he this: that the occasion on which it was made, rebuts the inference arising, prima facie, from a statement prejudicial to the character of the plaintiff; and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite or ill will, independent of the circumstances in which the communication was made. (2 Russell on Crimes, 246, margin, 245, 8th Am. ed.; Lewis v. Chapman, 16 N. Y., 369-373.) Such an occasion, is when a communication is fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. (White v. Nichols, supra; Toogood v. Spryging, 1 C. M., and Roscoe, Exch., 181.) A written communication between private persons concerning their own affairs is prima facie privileged. And though all that is said is under mistake, yet the words are not for that reason alone, actionable. (Howard v. Thompson, 21 Wend., 319; P. W. & B. R. Road v. Quigley, 21 How. U. S., 202; Rex v. Hart, 1 Wm. Black., 386.) Where both the party making and the party receiving the communication, have an interest in it, it has never been doubted that it was privilegéd. (Lewis v. Chapman, supra.) ”
The same Judge said in Hamilton v. Eno (81 N. Y. 116, 124):
< ‘ There are certain communications which are privileged and prima facie excusable because of the occasion; that is, they will not he deemed libelous, though the party making them may not *1053 be able to prove them to be true, and may in fact be wrong in thinking them to be so. The effect of the privilege is this: that the law will not imply malice from the fact of the publication, and without malice, express or implied, there is no libel. To make the author of the charge liable in such case, actual malice must be shown to have moved him. Whether there was actual malice is for the jury to say, either from direct proof, or as an inference from other proof, or from the libel itself.
“ The occasion that makes a communication privileged is when one has an interest in a matter, or a duty in regard to it, or there is a propriety in utterance, and he makes a statement in good faith to another who has a like interest or duty, or to whom a like propriety attaches to hear the utterance. (Van Wyck v. Aspinwall, 17 N. Y. 190; Klinck v. Colby, supra; Sunderlin v. Broadstreet, 46 N. Y. 191.) ” (Emphasis supplied.) (See, also, Ashcroft v. Hammond, 197 N. Y. 488, 494.)
“ Since the occasion or relationship (or both) is one where the interest or duty privileges the publication, the law does not infer from the publication the malice which it does where no such duty exists. In other words, there is no legal implication of malice where the occasion is privileged.
‘ ‘ But where the occasion is privileged the privilege may be destroyed by proof of actual malice on the part of the defendant. The burden of proving this actual malice to destroy the privilege is on the plaintiff.” (Seelman on Law of Libel, par. 272, p. 265 and cases cited.)
The defense of qualified privilege may also be destroyed by showing excessive publication (Moyle v. Franz, 267 App. Div. 423). In the latter case the Appellate Division of this department stated (pp, 425-426): “ The qualified privilege of a religious society to publish matters of interest to its members may be destroyed by showing excessive publication or other evidence of malice. (Pecue v. West, 233 N. Y. 316, 321-322; 33 Am. Jur., Libel and Slander, § 188, p, 179; 17 R. C. L., Libel and Slander, § 90, p, 344; and see Murray v. Brancato, 290 N. Y. 52, 58.) Evidence was adduced from which the jury could have found that there was excessive publication.”
Iu the light of the foregoing rules, the question for determination upon this motion is whether upon the record herein the defense of qualified privilege is established as a matter of law and that there is no triable issue presented with respect to excessive publication or actual malice on the part of the defendants which would destroy the defense interposed.
The highlights of the relevant facts may be summarized as follows;
*1054 The plaintiff is a practicing physician. The defendants are the Health Insurance Plan of Greater New York (hereinafter referred to as “ HIP ”) and two doctors who are the medical director and deputy medical director thereof.
Since 1944 HIP has been licensed to carry on in the State of New York the business of a nonprofit medical expense indemnity corporation and provides prepaid medical care to persons now numbering over 500,000 in New York City. These persons comprise the members of families of union members, civil servants and members of other large employee groups. It further appears that the city is divided into 30 districts, each of which is serviced by a partnership of some 20 to 30 doctors, some of whom are general practitioners and others specialists in 12 basic fields of medicine and surgery. Each insuree of HIP is given- a directory listing the various medical groups and their locations and containing the names and addresses of the general practitioners and specialists affiliated with each group. The insuree then selects the medical group which is to provide him with medical care. Within that group he chooses a general practitioner as a family doctor. Each such group of doctors receives from HIP per capita premiums for each member enrolled with that group and they divide that compensation under whatever arrangement each partnership group may arrive at. The plaintiff in this case is a specialist in surgery who Avas connected Avith one of these groups from 1947 to December 23, 1953 when he was discharged.
HIP examines the qualifications of each of these doctors and establishes standards to be maintained. This is done through their own medical control board, a staff comprised of a panel of physicians. Each doctor agrees to conform to the standards set by this board.
In 1953 the two individual defendants were informed that the plaintiff’s malpractice insurance was not being renewed for cause. They made an investigation Avhich indicated that the malpractice insurance company had paid some losses on some operations which this plaintiff had performed. Conferences were held at which minutes were recorded. Defendants maintain that they considered not only this question of malpractice insurance but the opinion of the chief surgeon in one of the hospitals Avith which the plaintiff was connected and certain changes in his status on the staff of a hospital about which they claimed he made misrepresentations.
It was at these conferences and. hearings that the defamatory publications complained of were made. The plaintiff avers that generally speaking, the defamatory statements charge him with *1055 professional incompetency in his specialty (surgery); that appointments at hospitals were not renewed because of incompetency; that he does not possess the minimal hospital requirements of defendant HIP; that plaintiff lacks training and skill; that he deliberately concealed and withheld from the defendant HIP information as to his background, affiliations and employments, etc.
Plaintiff charges that the “ hearings ” conducted by the defendants to review his qualifications were in the nature of star chamber proceedings 1 ‘ designed to rubber-stamp a pre-determination of the individual defendants to effect his removal from the medical group of which plaintiff was a director and co-chief of surgery.”
In support of his claim that defendants were motivated by actual malice plaintiff points out that there had been disputes-between him and the defendants on 10 to 15 occasions involving matters of policy and administration which he specifically sets'forth; and that plaintiff was considered a trouble maker.
With respect to defendants’ claim that they caused an investigation of plaintiff’s professional qualifications and hospital affiliations after receipt of advice that plaintiff’s malpractice insurance would not be renewed for cause, plaintiff makes the following statement:
‘1 The alleged reliance by the defendants on the advice of Mr. Wanvig, the secretary of the aforesaid Malpractice Insurance & Defense Board in ordering the subsequent hearings at which I was defamed, were a mere pretense in the furtherance of the conspiracy by defendants to oust me as surgeon and co-chief of surgery, and is proof of their actual malice in making subsequent defamatory statements. The defendants well knew the malice which the said Mr. Wanvig bore towards me because of my opposition to the malpractice defense plan for HIP doctors as administered by the New York State Medical Society. The said Mr. Wanvig was not only the secretary of the said board, but was also the insurance broker who sold the individual malpractice insurance policies to the various doctors under the HIP plan. In and around September, 1953, prior to the supposed communication from Mr. Wanvig I spearheaded a movement to have the forty doctors in my medical group place their malpractice insurance with Lloyds of London instead of with Mr. Wanvig.
‘ ‘ The defendants were, aware of my activities to have the malpractice insurance taken away from Mr. Wanvig and placed elsewhere, and in spite of such knowledge maliciously relied, as they claim, on Mr. Wanvig’s advice that the Malpractice *1056 Insurance & Defense Board would not renew my malpractice insurance after February, 1954, because of its experience with my malpractice cases. The defendants well knew that malpractice insurance policies are written on a one year basis. The supposed bad experience related by Mr. Wanvig concerned two cases that I operated on in 1946 and 1947, respectively. Notwithstanding such cases, my malpractice insurance was renewed from year to year thereafter by Mr. Wanvig and his board. The last such renewal was in February, 1953. The defendants were well aware, or by simple investigation could have learned that my malpractice insurance was renewed by Mr. Wanvig from year to year, and it was only after I was active in the movement to take the insurance away from Mr. Wanvig that the said Mr. Wanvig decided not to renew my insurance after the current policy expired in February, 1954. Furthermore, the defendants well knew that the insurance company could have cancelled my coverage on five days’ notice, which was never done, indicating that I was not a bad risk.”
Upon this record the defense of qualified privilege is properly interposed and established, prima facie. Defendants have also presented satisfactory proof that the qualified privilege relied upon was not destroyed by reason of excessive publication. However, it cannot be said as a matter of law that the plaintiff has failed to present a triable issue of fact with respect to the existence of actual malice which would destroy the defense of qualified privilege. (See Miodownick v. Fischman, 134 App. Div. 246.)
The cases relied upon by defendant in support of the proposition that they are entitled to summary judgment are not apposite. The defense of qualified privilege is not involved in any of them. The judgments in Ashcroft v. Hammond (197 N. Y. 488, supra); Bowsky v. Cimiotti Unhairing Co. (72 App. Div. 172) and Haft v. First Nat. Bank (19 App. Div. 423) were not rendered on motions for summary judgment. In each case the judgment dismissing the complaint was rendered after trial. In those eases the uncontroverted proof established that the utterances were made under qualified privilege which the plaintiff in each case failed to overcome by proof of malice or any other ground that would destroy qualified privilege.
In the case at bar a triable issue of fact is raised with respect to the question of malice entitling plaintiff to a trial. (Barrett v. Jacobs, 255 N. Y. 520.)
The motion is therefore denied in all respects. Submit order.